575 A.2d 127

**Joyce K. WILCOX, Appellant,**

v.

**Ralph W. WILCOX.**

Superior Court of Pennsylvania.

Submitted Jan. 19, 1990.

Filed May 17, 1990.

120

Stuart M. Golant, Towanda, for appellant.

John S. Hollister, Jr., Troy, for appellee.

Before ROWLEY, FORD ELLIOTT and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from an order below attaching 50% of appellee-husband's wages and ordering the attachment to be credited to alimony arrearages. Appellant-wife contends that the trial court erred as a matter of law in (1) refusing to attach greater than 50% of appellee's wages and (2) crediting the attached wages to alimony arrearages instead of applying part to current alimony and the balance to arrearages. For the reasons that follow, we modify the order in part. As modified, the order is affirmed.

On November 12, 1982, following a 24–year marriage, the parties were divorced. At that time, the parties signed an agreement specifying the terms by which the marital property would be distributed. The agreement specified that the question of alimony would be submitted to the Bradford County Court of Common Pleas for determination. The trial court approved the agreement and incorporated it in its order granting the divorce. During the next four years, the parties' agreement was in force, and the matter of alimony was referred to a Master. Following discovery and hearings, the Master made findings of fact and conclusions of law and recommended to the trial court that appellee be ordered to pay appellant alimony. On August 15, 1986, the trial court reviewed the Master's recommendations and filed an order which stated that:

> upon consideration of the Master's findings of fact and conclusions of law, it is hereby Ordered, decreed and adjudged that Defendant [appellee] shall pay alimony to Plaintiff [appellant] in the amount to $100.00 per week, retroactive to the date of the divorce.

Trial Court Order, August 15, 1986, at 32. Thus, appellee owed appellant approximately four years of alimony arrearages. On May 1, 1987, appellant filed a petition for wage attachment. A Master considered the petition, made findings of fact, and recommended to the trial court that appellee's wages be attached. On June 12, 1987, the trial court ordered attachment of 50% of appellee's wages. Exceptions were filed, and after hearings and argument, the trial court entered an order on October 19, 1988 which stated:

the Court directs the Bradford County Domestic Relations Office to attach the wages of Ralph Wilcox [appellee] in the amount of $195[.]94 [equal to 50% of appellee's disposable income]. All of the sums received under the wage attachment shall be applied to the existing arrearage.

Appellant filed a motion for reconsideration of this order, which was denied, and this appeal followed.

Appellant contends that the trial court erred as a matter of law in (1) refusing to attach greater than 50% of appellee's wages and (2) crediting the attached wages to alimony arrearages instead of applying part to current alimony and the balance to arrearages. Appellant argues that the court's decisions in this regard are errcneous under Chapter 43 of the Divorce Code, 23 Pa. S.A. § 101 *et seq.* The trial court found that Chapter 43 did not apply to alimony orders because the Chapter refers only to "support" and makes no specific reference to "alimony." *See* Trial Court Opinion, January 27, 1989 at 1–2. If the trial court was correct in finding that Chapter 43 is inapplicable, we would have to affirm the order below. Accordingly, before turning to the merits of appellant's claims, we first must determine whether Chapter 43 applies.

Alimony matters generally are governed by Chapter 5 of the Divorce Code, entitled "Alimony and Support." Under this chapter, the court has the power to order alimony and alimony pendente lite. *See* 23 Pa. S.A. §§ 501, 502. Enforcement of arrearages is governed by § 503, which pro-

vides, *inter alia,* that the court may order an attachment of up to 50% of a party's wages to satisfy an alimony order. *Id.* § 503(3).

■ In addition to the specific provisions contained in Chapter 5, Chapter 43 of the Code contains general provisions governing support. Appellant submits that these provisions exist in addition to the Chapter 5 provisions. Although our research reveals no caselaw and the parties cite none regarding whether Chapter 43 applies to alimony awards, after reviewing the structure of the Divorce Code we see no reason not to apply Chapter 43 in addition to the other provisions.

The general definition section of the Divorce Code, 23 Pa. S.A. § 104, defines alimony as *"[a]n order for support* granted by this or any other state to a spouse or former spouse in conjunction with a decree granting a divorce or annulment." *Id.* (emphasis added). In addition to the fact that the definitional section contemplates that alimony is a form of support, Chapter 43 itself makes clear that its provisions may *supplement* other specific provisions:

> Actions or proceedings provided by this chapter are *in addition* to and not in substitution of actions or proceedings provided by unsuspended statutes where there is desertion or failure to perform a duty to support.

*Id.* § 4301(a) (emphasis added). Moreover, the definitional section within Chapter 43 defines an "Order of Support" as one that:

> Includes assistance imposed or imposable by law or by any court order, whether interlocutory or final, whether incidental to a proceeding for *divorce,* separate maintenance, action for failure to support a child born out of wedlock or otherwise.

*Id.* § 4302 (emphasis added). Thus, neither the Code as a whole nor Chapter 43 itself limit its provisions to support orders not connected with divorce. Accordingly, it appears that the legislature intended Chapter 43 to be applied to all orders in the nature of support, which would include alimo-

ny. The trial court therefore should have considered the relevant sections of the Chapter in fashioning its award. We may now turn to the merits of appellant's claims.

Initially, appellant contends that the court erred in attaching 50% of appellee's wages rather than 65%.[1] Appellant's argument in this regard is somewhat convoluted. The trial court attached 50% of appellee's wages based on 23 Pa. S.A. § 503. Section 503 states in relevant part:

> If at any time a party is in arrears in payment of alimony or alimony pendente lite as provided for in sections 501 and 502 after hearing, the court may, in order to effect payment of arrearages:
>
> *    *    *    *    *    *
>
> (3) Attach no more than 50% of the wages of the party.

*Id.* § 503(3). Appellant notes, however, that under *federal* law governing the maximum amount of garnishments, a court can attach up to *65%* of a party's disposable income. *See* 15 U.S.C. § 1673(b)(2)(B).[2] Appellant further notes that Chapter 43 of the Divorce Code specifically refers to the federal statute when setting the maximum amount of attachment that is allowed. *See* 23 Pa. C.S.A. § 4348(g).[3] Because § 4348(g) refers to federal law, appellant suggests that the Pennsylvania structure allows for a greater attachment of 65%. We disagree.

Although the federal statute indeed sets the maximum attachment at 65% of a party's disposable income,

---

1. The trial court fashioned its order based upon appellee's disposable income, not his total wages. The trial court stated that "although the term 'wages' is not defined by the Divorce Code, the Court holds that equity requires that term to be defined the same as 'disposable earning' [sic]". Trial Court Findings of Fact and Conclusions of Law, October 21, 1988 at 1. Appellant does not challenge this determination.

2. The federal provision is part of the Consumer Credit Protection Act, 15 U.S.C. § 1601 *et seq.*

3. Section 4348 states in relevant part:
   The maximum amount of any attachment under this section shall not exceed the limits set forth in the Consumer Credit Protection Act (Public Law 90–321, 15 U.S.C. § 1601 et seq.).
   *Id.* § 4348(g).

there are other sections of the Consumer Credit Protection Act that specifically limit the applicability of § 1673(b)(2)(B). In particular, 15 U.S.C. § 1677 provides that:

> This subchapter *does not annul, alter, or affect,* or exempt any person from complying with, the laws of any State
>
> > (1) prohibiting garnishments or *providing for more limited garnishments* than are allowed under this subchapter, ...

*Id.* at § 1677(1) (emphasis added). Here, the 50% garnishment provided for in 23 Pa. S.A. § 503(3) is more restrictive than the 65% garnishment allowed by 15 U.S.C. § 1673(b)(2)(B). The decision of the Pennsylvania Assembly to provide for more limited garnishment is perfectly in keeping with the federal-state interplay contemplated by the federal act. Accordingly, we see no reason not to enforce the 50% ceiling contained in 23 Pa. S.A. § 503(3), In further support of this conclusion, we note that other courts similarly have held that § 1677 requires that more restrictive state laws on garnishment should apply. *See Evans v. Evans,* 429 F.Supp. 580, 582 (W.D.Okla., 1976); *Crane v. Crane,* 417 F.Supp. 38, 40 (E.D.Okla., 1976); *First Natl. Bank of Denver v. Columbia Credit Corp.,* 179 Colo. 242, 499 P.2d 1163 (1972). For example, the *Evans* court reasoned that:

> The federal statutes dealing with garnishment (15 U.S.C. §§ 1671–1677) are not an attempt to create or establish garnishment proceedings but are meant only to pre-empt [sic] state laws which are less restrictive. The federal law is meant to place a maximum for garnishment of that which it defines as disposable earnings, but it does not preempt those state statutes dealing with garnishment that are more restrictive. *Hodgson v. Hamilton Municipal Court,* 349 F.Supp. 1125 (S.D.Ohio, 1972); and *Hodgson v. Cleveland Municipal Court,* 326 F.Supp. 419 (N.D.Ohio, 1971). Therefore, in the case at bar, the Court must look to Oklahoma law regarding garnishment if it is more restrictive.

*Evans v. Evans, supra* at 582. We adopt this reasoning as our own, and hold that 23 Pa. S.A. § 503(3) is not preempted by the less restrictive federal garnishment law. Therefore, the trial court did not err in ordering an attachment of 50% of appellee's wages.

Appellant next contends that the court erred in the manner in which it ordered the attached payments to be credited. In support of this argument, appellant relies on § 4348 of the Divorce Code, which provides:

If support arrearages exist at the time of the entry of the order, the order shall specify all of the following:

(1) To whom an arrearage is owed and the amount of the arrearage.

(2) The period of time for which the arrearage is calculated.

(3) The *amount of periodic support to be applied to current support and the amount to be applied to arrearages.*

(4) If support arrearages are owed to more than one obligee, how payments are to be divided and in which priority.

(5) *A direction that all payments are to be credited to current support obligations first, with any payment in excess to be applied to arrearages.*

*Id.* at § 4348(d) (emphasis added). In light of this provision, appellant argues that the allocation of payment of the attached money should first be to current support and then any money in excess to arrearages. In its opinion, the trial court stated that:

The foregoing [trial court's determination that Chapter 43 is not relevant in alimony enforcement proceedings] dictates that the Court hold that the Divorce Code does not prescribe the method by which accrued alimony arrearages must be remitted. The Court is not bound by 23 Pa. C.S.A. Section 4348(d)(5) to apply payments first to a current support obligation, as Plaintiff contends. The Court here has properly exercised its discretion in ordering Defendant's payments to apply fully to the existing

arrearage. The Court rejects Plaintiff's assertion that error has been committed by failing to follow the support arrearage procedure outlined in Section 4348(d)(5).

Trial Court Opinion, January 27, 1988 at 2–3. In light of our initial conclusion that the provisions of Chapter 43 are relevant to the enforcement of alimony orders, we find that the trial court should have considered § 4348(d)(5) in fashioning its attachment order.[4]

## CONCLUSION

For the foregoing reasons, we hold that the trial court properly ordered attachment of 50% of appellee's disposable income, but that 23 Pa. C.S.A. § 4348(d) requires that the attached money first should be applied to current alimony obligations and then to arrearages. Accordingly, we affirm the trial court order to the extent that it orders a $195.94 per week attachment of appellee's wages; but we modify the order to allocate $100.00 to current obligations and the remainder, $95.94, to alimony arrearages. As modified, the order is affirmed.

Order affirmed as modified.

---

**4.** In all candor, we have some difficulty in seeing how the allocation of arrearages prejudiced appellant. Appellant argues that:

The effect of applying all payments to arrearages is to reduce the balance of Plaintiff's [appellant's] judgment and reduce the amount of interest to be paid by Ralph Wilcox [appellee], thereby rewarding him for his dilatory behavior.

Appellant's brief at 6. We fail to see how an order which discharges arrearages first would reduce the amount of interest, in that, as appellee pays arrearages, he continues to incur a monthly obligation, which itself would generate interest.