### Goodstein v. Goodstein

*Carl N. Martin II,* for plaintiff.
*Alfred Marroletti,* for defendant.
*Eugene A. Spector,* for garnishees.

WRIGHT, *S.J.,* July 18, 1991—Malka C. Goodstein and Martin E. Goodstein were divorced in the State of Connecticut in January 1983. The divorce decree provided for unallocated alimony and support in the sum of $200 per week for Mrs. Goodstein and their child. In addition, Mr. Goodstein was ordered to pay past due mortgage payments, existing liens, taxes, counsel fees and other amounts.

On January 25, 1985, the Connecticut Superior Court entered judgment against the appellant in the amount of $42,966.79 for arrearages on the January 20, 1983 decree. Mrs. Goodstein subsequently transferred this judgment to the Commonwealth of Pennsylvania, pursuant to the provisions of the Uniform Enforcement of Foreign Judgments Act, 42 Pa.C.S. §4306.

On February 11, 1988, Mrs. Goodstein filed a praecipe for writ of execution naming as garnishee

the appellant's employer, Rosenfelt, Siegel & Goldberg, an accounting firm.[1] The attachment was served on the garnishee on March 2, 1988, but no part of defendant's wages were actually withheld until October 1988.

Once the garnishee belatedly started attaching wages, defendant filed preliminary objections to the writ, which this court denied. Appeal was taken in the Superior Court (no. 2539 Philadelphia, 1988), and the Superior Court modified the garnishment. There were a series of three orders issued by the Superior Court modifying the garnishment. They were as follows:

"And now, October 4, 1988, appellant's application for supersedeas is granted to the extent that the garnishment shall not exceed a sum equal to 50 percent of the net compensation paid to appellant."

The second order stated:

"And now, January 12, 1989, upon consideration of appellant's emergency application for clarification of this court's order of October 4, 1988, the order of October 4, 1988 is clarified as follows: 50 percent of appellant's net disposable income shall continue to be escrowed by the garnishee and 50 percent of appellant's net disposable income shall be released to appellant."

Finally, the Superior Court entered a third order stating:

"And now, February 9, 1989, after review of the entire record and the presentation of argument by the parties, it is hereby ordered:

"That the garnishee, Rosenfelt, Siegel & Goldberg, is directed to withhold from the earnings of

---

1. During the pendency of this litigation, Rosenfelt, Siegel & Goldberg apparently incorporated and became Rosenfelt, Siegel & Goldberg, P.C. as discussed further below.

appellant the greater of the sum of $1,300 per month, or a sum equivalent to 50 percent of his net earnings;

"That the garnishee is directed to hold such sums, as will be withheld pursuant to this order, as well as such sums as have already been withheld from the compensation of appellant, in escrow pending the final resolution of the litigation of which this appeal is a part; and

"That the prothonotary of the Superior Court is directed to set an expedited schedule for the submission of briefs and the presentation of oral argument."

The last order did not establish what Mr. Goodstein's "net income" was, and defendant, in a rather blatant attempt to reduce his net income, increased his withholding. Plaintiff made an application to this court for determination of what the proper withholding was, and on March 19, 1989, this court held that it had the authority to preserve the status quo pendente lite pursuant to Pa.R.A.P. 1701(b)(1), and held that the proper withholding for the purposes of calculating net income under the Superior Court's order of February 9, 1989, was the withholding which defendant had prior to the appeal to the Superior Court.

On August 30, 1989, the Superior Court sustained the wage attachment insofar as it allowed garnishment of wages for amount due for arrearages on alimony and support. The Superior Court remanded the case to this court, however, for determination as to whether the Connecticut judgment also represented amounts for obligations other than alimony and support since wage garnishment would not be allowed in Pennsylvania for collection of such other obligations.

Upon remand, this court entered an order on October 20, 1989, subsequently amended on November 6, 1989, holding $42,966.79 to be amount of support and alimony represented by the out-of-state judgment, and allowing that amount to be enforced by wage attachment.

In the interim, plaintiff issued a second writ of execution naming Rosenfelt, Siegel & Goldberg, P.C. as garnishee (hereinafter corporate garnishee). Subsequently, plaintiff entered a default judgment for an unliquidated amount against the corporate garnishee as required by the Pennsylvania Rules of Civil Procedure when the corporate garnishee had failed to make timely answers to the interrogatories in attachment.[2] A hearing was then held to determine the amount of the judgment to be entered against the garnishee. Subsequent to that hearing, this court entered an order as follows:

"And now, May 7, 1991, judgment having been entered against the garnishee, Rosenfelt, Siegel & Goldberg, and a hearing having been held for assessment of damages against the garnishee, it is hereby ordered, adjudged and decreed that judgment is entered against the garnishee, Rosenfelt, Siegel & Goldberg, and in favor of plaintiff in the sum of $15,327.63, together with interest from the date of entry of the default judgment and the costs of this garnishment."

It is from that order that plaintiff has appealed, and it is that appeal which necessitates the writing of this opinion.

In response to an order to provide a concise statement of matters complained of upon appeal, plaintiff made a statement of 11 exceptions to our ruling, as required by Rule 1925 of the Pennsylvania

---

2. See Pa.R.C.P. 3146, discussed *infra.*

Rules of Appellate Procedure. At the threshold, we have to address the ninth matter complained of because plaintiff is correct. The exception was that judgment was entered against Rosenfelt, Siegel & Goldberg when it should have been entered against the corporate garnishee, Rosenfelt, Siegel & Goldberg, P.C. This was a clerical error with very unfortunate results.

This court has considered what authority it has to change this order after an appeal has been filed, and we conclude that we do have the authority to correct our error. Rule 1701 of the Pennsylvania Rules of Appellate Procedure states that the trial court may no longer proceed after an appeal has been taken but provides certain exceptions. Included in those exceptions is the authority to "correct formal errors in papers relating to the matter." This court obviously loses the right to make substantive changes in an order after an appeal has been taken. *Renk v. Cordice,* 286 Pa. Super. 512, 429 A.2d 639 (1981); *Marlowe v. Zoning Hearing Board,* 52 Pa. Commw. 224, 415 A.2d 946 (1980).

This court has considered the effect of a new order and believes that although it may have a substantive effect, it is within the provision of Rule 1701 which allows formal corrections to papers. This new order will not affect any of plaintiff's substantive rights except that the determination which we intended to make, which was a determination of the amount owed by the defaulting corporate garnishee, will now have been made.

It does affect the substantive rights of the corporate garnishee as Rosenfelt, Siegel & Goldberg, P.C. now has a judgment entered against them for a liquidated amount whereas previously they had an unliquidated interlocutory judgment. They may

wish to take an appeal from this new order, as they may not agree with it, and if they choose to do so, we presume the Superior Court will consolidate such an appeal with the appeal already filed by plaintiff.

It does seem to this court, however, that we do have jurisdiction which we are trying to exercise carefully to correct this error. See *J. Nevin White Lumber Co. Inc. v. Sheriff*, 16 Pa. Commw. 501, 431 A.2d 1190 (1981); *Toczylowski v. General Bindery Co.*, 359 Pa. Super. 572, 519 A.2d 500 (1986).

We have, therefore, entered an order modifying our prior order to rescind judgment against Rosenfelt, Siegel & Goldberg and enter judgment in favor of plaintiff and against Rosenfelt, Siegel & Goldberg, P.C. in the sum of $15,327.63, together with interest from the date of entry of the default judgment and the costs of the garnishment.

Having, hopefully, cleared this procedural error, we now turn to the substantive reasons for the amount of damages we assessed.

Under prior practice, a garnishee who had failed to answer interrogatories in attachment was held responsible for the entire amount of a judgment against a defendant. That rule was apparently felt to be too harsh, and it was modified. Rule 3146(a)(1) of the Pennsylvania Rules of Civil Procedure now provides as follows:

"If the garnishee within the time allowed by these rules fails to file an answer to interrogatories containing a notice to answer, the prothonotary on praecipe of the plaintiff shall enter judgment, unliquidated in amount, in favor of the plaintiff and against the garnishee. The amount of the judgment shall thereafter be assessed by the court on motion, notice to the garnishee with a copy to the defendant in the form provided by subdivision (a)(2), and

hearing. At the hearing the garnishee may raise defenses against the judgment debtor available under Rule 3145, provided that written notice thereof has been given to all parties not less than 10 days prior to the hearing. If the garnishee appears, the court shall determine and enter judgment for the value of the property of the defendant in the hands of the garnishee but shall not enter judgment in excess of the judgment of the plaintiff against the defendant together with interest and costs. If the garnishee fails to appear, or if appearing offers no evidence, the amount of the judgment shall thereupon be entered in the amount of the plaintiff's judgment against the defendant together with interest and costs, and the court may also award to the plaintiff reasonable expenses including attorney's fees.''

We conclude from this that only if a garnishee either fails to appear at the hearing for assessment of damages or fails to present evidence at the hearing can a court enter a judgment against the garnishee for the full amount of the judgment entered against the defendant.

It is the garnishee's burden of proof in hearings under Pa.R.C.P. 3146, to show what money of the defendant the garnishee holds. In the normal case, however, a garnishee is not allowed to make any payments to the defendant. In the instant case, however, the Superior Court's order allowed some payments to be made.

The garnishee is certainly responsible for withholding all monies that they should have withheld. We think it is beyond question that the garnishee was responsible for the greater of $1,300 per month or 50 percent of the defendant's net wages, calculated at a withholding rate which this court deter-

mined to be the proper rate and not the purely self-serving withholding which defendant had come up with.

The burden of proof was on the garnishee at the hearing. We rather reluctantly concluded that they met a burden of showing what gross wages they had paid to this defendant. From that, we were able to apply the withholding which we had previously determined to be correct ($209.27 per week) and calculate 50 percent of the net income due plaintiff which, under the Superior Court's order, was the amount to be held. This was slightly in excess of $1,300 per month.

Our calculations showing the pay periods starting at the first payday after service of the writ and until the last pay period when defendant's employment terminated, are shown in an appendix to this opinion. [Appendix omitted from this publication.]

There is one lump sum payment on June 1, 1988, for $4,500 which was never fully explained, but which we understand to be a bonus payment which should be subject to the same withholding rate. If, of course, this was something other than wages, then the Superior Court's order limiting attachment on wages would not apply.[3] Under such circumstances, the entire $4,500 should have been attached and would form part of the judgment. It appeared, however, to be a bonus, subject to withholding, and therefore, subject to the limitation on wage attachment.

---

3. The Superior Court's orders actually limited garnishment of wages paid by Rosenfelt, Siegel & Goldberg and not Rosenfelt, Siegel & Goldberg, P.C. No one, however, has suggested that the same order would not apply to the corporate garnishee.

We now turn to the remaining matters complained of on appeal by plaintiff. We will try to discuss them in logical order.

The first item is that judgment should have been entered for the full amount of an automobile allowance of $1,200.08. As we noted in discussing the $4,500 bonus, if there was an amount which was not wages or salary or commissions, it was not subject to exemption from execution, and the entire amount should have been attached. Unfortunately, in reviewing the notes of testimony of the December 1989 hearing, we did not see evidence that there was an automobile allowance that was not wages as actually handled. We would agree that if there is an automobile allowance, however, then the entire amount was subject to attachment as it was not wages, salary or commissions and was not subject to exemption.

Plaintiff's second matter complained of on appeal states:

"The court erred in giving effect to the Superior Court's orders of October 4, 1988, and February 9, 1989, when those orders did not indicate that the garnishee was exempted from the normal requirement of the filing of a bond prior to a stay being effective and in the absence of the filing of any bond by the defendant or the garnishee."

The gentlest way we can respond to this suggestion is to say that this court does not sit to review the decisions of the Superior Court of Pennsylvania. The system works the other way around. They unquestionably have superior authority to this court, and we are bound to obey their mandates.

The issue raised regarding a supersedeas bond, however, is an interesting one and does deserve comment. Rule 1711 of the Rules of Appellate Procedure governs an automatic supersedeas for an

order of payment of money. A garnishment order, however, is not an order for the payment of money, but rather for the attachment of money. No one is paid until an execution on the garnishment takes place. Such an execution on a garnishment would be subject to Rule 1731. The complaint here, however, is that monies were not being garnished or attached, and that is not an order to pay money. Appellate Rules 1732 and 1733, which cover applications for a stay pending an appeal on injunctions and similar matters, seems to apply. A garnishment is, in fact, an injunction and disobedience to that is punishable, under certain circumstances, by contempt. See Pa.R.C.P. 3111(c). Appellate Rule 1733(a) states:

"*General rule.* An appeal from an order which is not subject to Rule 1731 (automatic supersedeas of orders for the payment of money) shall, unless otherwise prescribed in or ordered pursuant to this chapter, operate as a supersedeas only upon the filing with the clerk of the court below of appropriate security as prescribed in this rule. Either court may, upon its own motion or application of any party in interest, impose such terms and conditions as it deems just and will maintain the res or status quo pending final judgment or will facilitate the performance of the order if sustained."

Clearly, the court may impose the requirement of security either on its own motion or the application of the party, but there is no automatic security required as there is under Rule 1731. An application must be made under Appellate Rule 1732. In this case, neither the Superior Court nor this court was ever asked to require the posting of security.

We conclude, therefore, that if the Superior Court did not require a bond and we were not asked to impose a bond, no bond was necessary, and the

supersedeas granted by the Superior Court was valid without a bond.

Statement no. 3 is that we erred by condoning the garnishee's practice of ignoring the writ for a period of time. We do not condone the practice, but as long as the garnishee pays the amount of the judgment against it; that is, the amount that it should have withheld, plaintiff is not harmed. Although we could have been asked to apply an appropriate sanction such as contempt, the time for that passed once the garnishee began to obey the mandate of the writ.

Allegation of error no. 4 is similar, claiming that this court condoned "the garnishee's practice starting with the payday of September 15, 1988, and continuing thereafter of ignoring the writ of the court by attaching substantially less than the full amount of the debts owed by it to the defendant." Again, as long as judgment is entered against the garnishee for the amount that it should have withheld, whether or not it did, it should not matter that defendant got a windfall unless the judgment against the garnishee is not paid.[4]

To the extent that the garnishee has "flouted" the attachment order, however, it may be that punishment for contempt is a remedy where a judgment against a garnishee remains unpaid because of the garnishee's failure to preserve funds. We are not, as yet, at that stage of procedure and may never get there.

Allegation no. 5 is somewhat hard to understand, stating, as it does, that we are condoning the garnishee's practice of flouting the Superior Court's

---

4. That is, it should not matter legally that defendant got a windfall. Defendant's conduct is utterly reprehensible. He has obviously made a conscious decision that he will do everything possible to avoid paying child support and alimony to his ex-wife.

order of October 4, 1988. We have tried and succeeded, we believe, in correctly calculating defendant's wages based upon the evidence presented to this court.

Allegation no. 6, that "[t]he court erred in permitting the garnishee to attach only 50 percent of the defendant's net wages even though there was no legal basis whatsoever to permit the garnishee to attach less than 65 percent of defendant's properly calculated net wages," is directly contrary to the Superior Court's orders. Plaintiff appears to rely upon the federal statute limiting wage attachment, which would seem to this court to have allowed up to 65 percent attachment. See 15 U.S.C. §1673(b)(2).

The Superior Court's opinion of August 30, 1989, however, cites 23 P.S. §503, which is the provision of the Pennsylvania Divorce Code which allows attachment of no more than 50 percent of wages. In any case, this court is bound to obey the mandate of the Superior Court.

The same logic applies to allegations nos. 10 and 11, that we erred in permitting defendant to withdraw money without posting security and erred in assessing damages in an amount less than 65 percent. We did not set the allowable garnishment level; the Superior Court did. In addition, there was no requirement of anyone posting a bond.

We believe the remaining allegations of error in plaintiff's statement are discussed in this opinion and need not be further elaborated.

It is easy to feel sympathetic with Mrs. Goodstein, and it is at least as easy to be disgusted with the behavior of her ex-husband, which is a despicable disregard for his legal obligations of support. It is almost as easy to be angered by the behavior of the garnishee. Whether or not it was done intentionally,

the garnishee certainly ignored the mandate of this court for a period of months and appeared to do everything it could to help its employee avoid his obligations. The explanations of the garnishee's witness as to what efforts the garnishee made to determine what it should be withholding are thin, at best, are not credible, and do not speak well for the intelligence of a partnership of certified public accountants. Had Rule 3146 not been changed so as to give the garnishee who fails to answer interrogatories in attachment a second chance to prove its obligations, we would have had no difficulty, morally or legally, in finding the garnishee entirely liable for the amount due by this defendant. That is simply no longer the law in the Commonwealth of Pennsylvania, however, and we are constrained to act on the evidence that was before us.

For these reasons, we entered our orders of May 7, 1991, and July 17, 1991.