619 A.2d 703

**Malka C. GOODSTEIN, Appellant**

v.

**Martin E. GOODSTEIN**

**and**

**Rosenfelt, Siegel & Goldberg, P.C. (Garnishee).**

Superior Court of Pennsylvania.

Argued March 19, 1992.

Filed Nov. 10, 1992.

Reargument Denied Jan. 21, 1993.

[redacted]

[redacted]

[redacted]

---

Carl N. Martin, II, Philadelphia, for appellant.

Eugene A. Spector, Philadelphia, for participating party.

Before CAVANAUGH, OLSZEWSKI and BECK, JJ.

BECK, Judge:

In this appeal, *inter alia*, we decide whether under the Divorce Code[1] the 50% limit on garnishment of wages for nonpayment of alimony is properly calculated on 50% of an individual's gross wages, or, as determined by the trial court, on 50% of an individual's net wages. We find that section 3703 of the Divorce Code permits garnishment of up to 50% of an obligor's gross wages. For this reason, as well as others outlined in the opinion, we reverse the order of the trial court.

In this appeal, plaintiff-appellant Malka Goodstein is challenging the trial court's order of garnishment against her ex-

1. 23 Pa.Cons.Stat.Ann. Section 3703.

husband's former employer, defendant-appellee Rosenfelt, Siegel & Goldberg, P.C. (Rosenfelt).[2]

-Facts and Procedure-

Malka C. Goodstein (Malka) and Martin E. Goodstein (Martin) were divorced in Connecticut in January, 1983. The divorce decree provided for unallocated alimony and support in the amount of $200.00 per week for Malka and the couple's child. In addition, Martin was ordered to pay past due mortgage payments, existing liens, taxes, counsel fees and other amounts.

On January 25, 1985, the Connecticut Superior Court entered judgment against Martin in the amount of $42,966.79 for arrearages on the 1983 decree. Malka subsequently transferred this judgment to the Commonwealth of Pennsylvania. She first attempted to enforce the judgment by filing a Petition to Enforce, Register, and Adopt Foreign Decree pursuant to sec. 506 of the Divorce Code, 23 Pa.Cons.Stat.Ann. sec. 3705. The petition was denied by the trial court. On appeal, in an unpublished opinion, this court affirmed the trial court's order, holding that sec. 506 permitted enforcement of foreign orders for alimony only; because the Connecticut judgment represented an unallocated sum for alimony, support, and other kinds of payments, it could not be enforced under sec. 506. *Goodstein v. Goodstein,* 1661 Phila.1986 (Pa.Super. December 8, 1987) (first appeal).

Malka then filed a petition pursuant to the Uniform Enforcement of Foreign Judgments Act, 42 Pa.Cons.Stat.Ann. sec. 4306, and was successful in having the Connecticut judgment transferred to the Delaware County Court of Common Pleas.

---

2. At the time of Mr. Goodstein's employment with Rosenfelt, the entity was organized as a partnership under the name Rosenfelt, Siegel & Goldberg. During the course of the litigation, the partnership incorporated and became Rosenfelt, Siegel & Goldberg, P.C. In recognition of this change, the trial court entered an order on July 17, 1991, 11 Pa. D. & C. 4th 294, correcting its previous order to direct that judgment be entered against Rosenfelt, Siegel & Goldberg, P.C. Appellee Rosenfelt has not contested this change in the name of the party against whom the trial court's order is entered. In this opinion, we will use "Rosenfelt" to refer to the partnership or the corporation interchangeably.

On February 11, 1988, Malka filed a Praecipe for Writ of Execution in the amount of $42,966.79 on the Connecticut judgment, now registered and adopted as a Pennsylvania judgment, naming Rosenfelt as garnishee. On March 2, 1988, the sheriff served the writ of execution on Rosenfelt.[3]

Martin filed preliminary objections to the writ of execution. The trial court denied his preliminary objections to the extent that the writ represented past due alimony and/or support. Martin appealed the court's order (second appeal).

While Martin's appeal of the writ of execution was pending, Malka continued to proceed against Rosenfelt. In March of 1988, Malka served Rosenfelt with interrogatories pursuant to Pa.R.Civ.P. 3144, regarding the amount of wages and other compensation paid to Martin. Rosenfelt filed a response to the interrogatories setting forth Martin's salary information. Based on Rosenfelt's response, Malka filed a praecipe with the court to enter judgment of garnishment in the amount of $11,529.38. On August 16, 1988, the court entered judgment pursuant to Pa.R.C.P. 3146(b) in the amount of $11,529.38 in favor of Malka and against Rosenfelt. At a later time the court awarded Malka $966.70 based on garnishment of an automobile allowance paid to Martin.[4] The total judgment of garnishment of approximately $12,500 will be hereinafter referred to as garnishment from "the first pay period."

Meanwhile, during the pendency of his second appeal, Martin sought and obtained three orders from this court. The first order stated as follows:

AND NOW, this 4th day of October, 1988, appellant's [Martin's] application for supersedeas is granted to the extent that the garnishment shall not exceed a sum equal to

3. Rosenfelt as garnishee was the party in interest in the trial court and is the appellee in this appeal.

4. Rosenfelt amended its answers to interrogatories after they were first filed, giving information on an automobile allowance paid to Mr. Goodstein. A judgment of garnishment in the amount of $966.70, based on this allowance, was entered against Rosenfelt on February 22, 1989.

fifty percent (50%) of the net compensation paid to appellant.

The second order stated:

AND NOW, this 12th day of January, 1989, upon consideration of appellant's emergency application for clarification of this court's order of October 4, 1988, the order of October 4, 1988 is clarified as follows: 50% of appellant's net disposable income shall continue to be escrowed by the garnishee and 50% of appellant's net disposable income shall be released to appellant.

Finally, this court entered a third order stating that:

AND NOW, this 9th day of February, 1989, after review of the entire record and the presentation of argument by the parties, IT IS HEREBY ORDERED:

THAT the garnishee, Rosenfelt, Siegel & Goldberg is directed to withhold from the earnings of appellant the greater of the sum of $1,300 per month, or a sum equivalent to 50% of his net earnings;

THAT the garnishee is directed to hold such sums, as will be withheld pursuant to this Order, as well as such sums as have already been withheld from the compensation of appellant, in escrow, pending the final resolution of the litigation of which this appeal is a part; and

THAT the Prothonotary of the Superior Court is directed to set an expedited schedule for the submission of briefs and the presentation of oral argument.

In August, 1989, this court issued its ruling in the second appeal, *Goodstein v. Goodstein*, 386 Pa.Super. 556, 563 A.2d 522 (1989). The Superior Court affirmed the trial court and held that the Connecticut judgment was enforceable as to support and alimony under 42 Pa.Cons.Stat.Ann. sec. 8127.[5] Since it was unclear as to how much of the Connecticut judgment represented alimony and support, the Superior

5. Martin had argued on appeal that under section 8127, entitled "Personal Earnings Exempt From Process", the court had no authority to issue a garnishment judgment where the underlying debt was an unallocated award of support, alimony and other items.

Court remanded to the trial court to make that determination. 563 A.2d at 525.

On remand, the trial court entered an order finding that $42,966.79 was the amount of the Connecticut judgment representing support and alimony, and that the total amount was subject to wage garnishment. In November, 1989, Rosenfelt made payment to Malka of $12,496.08, an amount equal to the sum of the garnishment judgments entered against Rosenfelt for the first pay period. This figure was based on Martin's wages up to August 16, 1988, and the automobile allowance.

In order further to garnish Martin's wages for the period of time following the first pay period Malka caused a second Writ of Execution to be issued, again naming Rosenfelt as garnishee and served a second set of interrogatories on Rosenfelt. The writ covered the period from August 17, 1988 to October 15, 1989 (the second pay period).[6] Upon Rosenfelt's failure to answer her interrogatories, Malka obtained a default judgment in an unliquidated amount on November 30, 1989. Following a hearing, the trial court issued an order entering judgment in garnishment against Rosenfelt and in favor of Malka in the amount of $15,327.63, together with interest from the date of the entry of the default judgment and the costs of the garnishment.

In its opinion, the trial court explained its calculation of the award as follows. The trial court found that wages and bonuses paid by Rosenfelt to Martin for his entire tenure with Rosenfelt, i.e., for the first pay and second pay period, totalled $72,554.58. The court then deducted an appropriate amount for federal income tax withholding,[7] and calculated 50% of the remainder. The result of this calculation was a determination

6. Martin left Rosenfelt's employ on October 15, 1989.

7. On June 15, 1988, after his employer had been served with the order of garnishment, Martin increased his tax withholding from $209.27 per pay to $342.56 per pay. This had the effect of reducing the amount of income subject to attachment by Rosenfelt for payment to Malka. The trial court found that Martin had increased his withholding deliberately in order to reduce the amount of money being held by Rosenfelt for Malka, and in its calculations used Martin's earlier withholding figure of $209.27.

that Rosenfelt owed Malka a total of $27,823.71, to which the court applied as a credit the $12,496.08 payment made by Rosenfelt in November, 1989. The remainder owed by Rosenfelt to Malka was $15,327.63, plus interest on this amount from the date of entry of the default judgment, and costs. Malka then filed this appeal (third appeal).

-Supersedeas Orders-

In this third appeal Malka first claims that the trial court erred in finding itself bound by the 50% ceiling on wage garnishment set forth in the supersedeas orders[8] of the Superior Court. We agree with Malka that the trial court erred in holding itself to be bound by the supersedeas orders entered pending the second appeal.

A supersedeas order "is an auxiliary process designed to supersede or hold in abeyance the enforcement of the judgment of an inferior tribunal." *Young J. Lee, Inc. v. Com., Dept. of Revenue,* 504 Pa. 367, 474 A.2d 266 (1983). A supersedeas order is *not* an appellate ruling on the merits of the judgment below; it "does not open, strike off or vacate the judgment or otherwise remove the judgment from the record or render it invalid." *Babin v. City of Lancaster,* 125 Pa. Commw. 470, 473, 557 A.2d 464, 466 (1989), *app. granted,* 525 Pa. 613, 577 A.2d 545 (1990), *quoting Wilkes–Barre Clay Products Co. v. Koroneos,* 342 Pa.Super. 582, 586, 493 A.2d 744, 746 (1985). While the reasoning of this court in entering a supersedeas may be persuasive to the trial court, the order itself is not binding on the trial court once the appeal has been decided. We note that in this case, when the judgment of garnishment was reviewed by this court in the second appeal, the judgment was affirmed to the extent it represented alimony and support and the matter was remanded only for the trial court to make a determination of how much of the Connecticut judgment was allocable to alimony and support. There was no reduction in the garnishment amount to meet the 50% limit of the Divorce Code. *See Goodstein v. Goodstein,* 386 Pa.Super. 556, 563 A.2d 522 (1989).

8. Orders of January 12 and February 9, 1988.

Malka also contends that the supersedeas orders were invalid because Rosenfelt failed to file appropriate security to support them. This issue is mooted by our finding that the trial court erred in finding itself bound by the supersedeas orders. Since the trial court was not bound by even valid supersedeas orders, we need not decide whether the orders here were valid or not, or whether security is needed to render this kind of supersedeas order enforceable.

In this third appeal, Malka raises various other claims of error. We address them separately.

### -Basis for Garnishment Award-

### -First Pay Period-

Malka's claim relates to the trial court's basing the award of garnishment on Martin's wages for his entire tenure with Rosenfelt instead of limiting the award to the second pay period. Malka argues that it was error for the court to recalculate the sum owed her for garnishment for the first pay period, *i.e.*, for wages from March 2 to August 16, 1988 and the automobile allowance. Malka asserts that Rosenfelt has already satisfied the judgments covering the first pay period by paying her $12,496.08. She asserts that Rosenfelt never appealed those judgments. She states that the trial court should have taken these judgments as conclusive of the amount due from Rosenfelt for the first pay period. We agree.

Judgments from the first pay period were entered on August 16, 1988 in the amount of $11,529.38, representing 65% of the net wages paid to Martin by Rosenfelt for March 2 to August 16, 1988, and later in the amount of $966.70, representing the automobile allowance paid to Martin by Rosenfelt. These two judgments representing the first pay period totalled $12,496.08. In November, 1989, Rosenfelt satisfied those judgments by paying Malka $12,496.08.

In its order which forms the basis of this third appeal, the trial court changed the percentage garnished for the first pay period from 65% to 50% of Martin's net wages, and failed to include any sum for garnishment of the amount paid to Martin

for the automobile allowance. The court's final award for these items was $2,271.00 less than the sum of the two judgments obtained by Malka earlier.

We agree with Malka that the trial court erred in recalculating the amount owed to her for the first pay period for the following reasons.

We find that the judgments based on the first pay period were. final judgments. Both were entered upon Malka's praecipes, asserting a right to judgment based on Rosenfelt's answers to her interrogatories. According to the Rules of Civil Procedure for the Enforcement of Money Judgments, Pa.R.Civ.P. 3145(a), the procedure between the plaintiff (herein Malka) and the garnishee (herein Rosenfelt) in an action for garnishment "shall, as far as practicable, be the same as though the interrogatories were a complaint and the answer of the garnishee were an answer in a civil action." Applying this rule, we find that Malka's praecipe for the entry of judgment was in the nature of a motion for judgment on the pleadings pursuant to Rule 3147.[9] *See Orie v. Stone,* 411 Pa.Super. 481, 601 A.2d 1268 (1992), *app. granted,* 530 Pa. 660, 609 A.2d 168 (1992) (treating Motion to Compel Payment, filed after interrogatories had been served and answered, as a motion for judgment on the pleadings pursuant to Rule 3147(a)); *Johnson v. Johnson,* 357 Pa.Super. 248, 515 A.2d 960 (1986), *app. den.,* 515 Pa. 581, 527 A.2d 541 (1987) (treating Rule to Show Cause Why the Answers to Interrogatories Should Not Be Stricken as Contrary to the Law as a motion for judgment on the pleadings pursuant to Rule 3147). A judgment on the pleadings under Pa.R.Civ.P. 3147 is a final and appealable order. *Orie v. Stone, supra; Johnson v. Johnson, supra.* Any appeal therefrom must be filed within thirty days. Pa. R.App.P. 903(a). Since Rosenfelt failed to file a timely appeal

9. Rule 3147 provides as follows: "If the court enters judgment for the plaintiff and against the garnishee upon pleadings or after trial, the judgment shall be for the property of the defendant found to be in the garnishee's possession, but no money judgment entered against the garnishee shall exceed the amount of the judgment of the plaintiff against the defendant together with interest and costs."

from the judgments for the first pay period, we find that Rosenfelt has waived the right to challenge those judgments.[10]

We therefore find that the trial court erred in re-calculating the items covered by the judgments for the first pay period, and reverse that portion of the trial court's award pertaining to garnishment for the first pay period.

-Second Pay Period-

We now address the court's calculation with regard to garnishment for the second pay period, from August 17, 1988 to October 15, 1989. The court's garnishment order was based on 50% of Martin's net earnings. We conclude the court erred because gross earnings, not net earnings, are the proper basis for the calculation under section 3703 of the Divorce Code.

Section 3703 of the Divorce Code, 23 Pa.Cons.Stat.Ann. sec. 3703, provides as follows:

> If at any time a party is in arrears in the payment of alimony or alimony pendente lite as provided for in sections 3701 (relating to alimony) and 3702 (relating to alimony pendente lite, counsel fees and expenses), the court may, after hearing, in order to effect payment of the arrearages.... (3) Attach no more than 50% of the wages of the party.

The question of whether the "wages" referred to in section 3703 refers to gross or net wages appears to be an issue of first impression in Pennsylvania.

The term "wages" is not defined in the Divorce Code. In looking to other Pennsylvania statutes that do define the term, we find that their definitions suggest that the word refers to gross, rather than net, wages. The Wage Payment and Collection Act defines wages as "includ[ing] *all* earnings of an

10. Indeed, we note that Rosenfelt in fact paid the judgments in November, 1989. In the hearing held on December 4, 1989, on Malka's second writ of execution, Rosenfelt's attorney reported to the court that payment of $12,496.00 had been made, N.T., 12/4/89, p. 6, and did not contradict Malka's counsel when he asserted to the court that that money was paid in satisfaction of the two earlier judgments. R.R. 109a–110a.

employe, regardless of whether determined on time, task, piece, commission or other method of calculation. The term 'wages' also includes fringe benefits or wage supplements whether payable by the employer from his funds or from amounts withheld from the employes' pay by the employer." 43 Pa.Stat.Ann. sec. 260.2a (emphasis added). The Unemployment Compensation Act defines wages as "*all* remuneration . . . paid by an employer to an individual with respect to his employment." 43 Pa.Stat.Ann. sec. 753(x) (emphasis added). Under the Unemployment Compensation Act, "remuneration is defined as payment for services performed." *Com., Dept of Corrections v. Com., Unemployment Compensation Board of Review,* 119 Pa.Commw. 296, 300, 547 A.2d 470, 472 (1988).

■ We are also guided by our concern that individuals could reduce the amount available for garnishment of their wages by increasing the amount deducted from their wages for certain expenses as well as by increasing the amount of federal or state income tax to be withheld, as in fact occurred in this case. It would not serve the purpose of this section of the Divorce Code, which is to provide a source of payment for the arrearages of a recalcitrant ex-spouse, to leave such a weapon in the hands of an individual who has already shown a disregard for his or her obligations. We therefore find the trial court erred in calculating the amount to be garnished at 50% of Martin's net wages instead of his gross wages for the period of August 17, 1988 through October 15, 1989.[11]

11. Malka also claims that the trial court erred in applying the 50% wage attachment found in the Divorce Code rather than the 65% attachment of a support obligor's wages pursuant to the Consumer Credit Protection Act, 15 U.S.C. sec. 1673(b)(2)(B). Based on *Wilcox v. Wilcox,* 394 Pa.Super. 119, 575 A.2d 127 (1990), we find no merit in Malka's argument.

  Malka also claims that the trial court erred in applying the 50% limit of the Divorce Code because, she claims, "this court had previously held that the Divorce Code does not apply to the Connecticut judgment," allegedly in our unpublished decision in *Goodstein v. Goodstein,* 1661 Phila. 1986 (Pa.Super. December 8, 1987). Malka simply is wrong in her characterization of this court's previous decision. As we stated above, the holding in that case was restricted to a finding that section 506 of the Divorce Code permitted enforcement of foreign decrees of alimony and support.

We reverse the order of the trial court and remand this matter with the direction that the trial court recalculate the amount of the garnishment judgment in accordance with this opinion. Jurisdiction relinquished.