## GRIMME COMBUSTION, INC.

### v.

## MERGENTIME CORPORATION and Insurance Company of North America.

**Appeal of: Insurance Company of North America and Travelers Casualty & Surety Co., Appellants.**

Superior Court of Pennsylvania.

Argued Sept. 14, 2004.

Filed Jan. 24, 2005.

---

Jeffrey A. Less, Philadelphia, for appellants.

Andrew W. Barbin, Mechanicsburg, for appellee.

BEFORE: FORD ELLIOTT, MONTEMURO,* and JOHNSON, JJ.

OPINION BY FORD ELLIOTT, J.:

¶ 1 This is an appeal brought by Insurance Company of North America, Inc. ("INA"), and Travelers Casualty & Surety Company ("Travelers") as successor in interest to United Pacific Insurance Company ("United Pacific"). The issue this appeal presents is whether the trial court erred when it found that a supersedeas bond Mergentime Corporation ("contractor") and INA procured in 1995 from United Pacific remained in force in December of 2000 under the facts this case presents. Finding no error, we affirm. In order properly to address the issues this appeal raises, we find it prudent first to set forth the lengthy procedural history of the case.

Plaintiff/Appellee Grimme Combustion, Inc. instituted the action in July of 1987 to recover damages for alleged breaches of contract by defendant/Appellant Mergentime, a general contractor retained by the Pennsylvania Department of Transportation (PennDOT) to undertake a highway construction project. Appellee was to provide repair *and reconstruction services for deterio-rated* concrete substructures supporting portions of the Schuylkill Expressway. In February of 1985, after submitting four proposals, Appellee obtained the contract to supply the necessary labor, equipment and materials at three locations. Appellant Mergentime's work, and thus Appellee's, was to be performed in stages between March 1, 1985, and May 30, 1986. Appellant Insurance Company of North America (INA) acted as surety in providing a payment bond covering the whole project for Appellant Mergentime, who was alleged to have caused delays and otherwise interfered with Appellee's operation, which, as a result, was not completed until December 19, 1986.

Prior to trial, Appellants appealed to this Court on the basis that the trial court improperly overruled their preliminary objections. The appeal was quashed as interlocutory, and the Pennsylvania Supreme Court denied Appellants' Petition for Allowance of Appeal. (*Grimme I*).[Footnote 1] Thereafter, Appellants answered Appellee's complaint, also filing new matter and a counterclaim. After Appellee replied, Appellants sought to dismiss the Complaint for lack of subject matter jurisdiction and failure to join an indispensable party, PennDOT. The trial court agreed and dismissed the case, but was reversed by this Court on appeal. (*Grimme II*).[Footnote 2] Again the Pennsylvania Supreme Court denied *allocatur*, and the matter returned to the trial court for disposition on the merits.

After rendering a verdict for $688,699.94[Footnote 3] in favor of Appellee, the court added prejudgment interest in the amount of $339,161.05 for a total award of $1,027,860.99. Appellants' post trial motions were denied, and they appealed for the third time to this Court, which vacated in part, and remanded for further proceedings. (*Grimme III*).[Footnote 4] Specifically, in addressing Appellants' claims on appeal, we ruled that: 1) the surety, Appellant INA, should not be held liable for any delays caused by Mergentime; 2)

---

* Retired Justice assigned to Superior Court.

although Mergentime 'failed to perform an essential matter necessary to the prosecution of the work,' *id.* at 18, specifically 'its duty to coordinate with PennDOT to ensure that the sounding and marking of repair areas was completed in a timely and orderly fashion,' *id.*, Mergentime was not required under the terms of the contract to allow Appellee access to worksites from the roadbed as part of its duty to provide reasonable access, *id.* at 13; 3) the trial court did not err in relying on the total cost method to compute damages; 4) the contract provision concerning 'no delay damages' was inoperative because of Mergentime's dereliction with regard to PennDOT; and 5) the trial court 'failed to demonstrate that it applied the proper legal standard or to explain the circumstances it considered in [awarding prejudgment interest on the entire verdict.]' *Id.* at 20. We remanded so that the trial court might apply the proper standard to its award of prejudgment interest, that is, the standard enunciated in *Frank B. Bozzo, Inc. v. Electric Weld Division of Fort Pitt Division of Spang,* [345 Pa.Super. 423,] 498 A.2d 895 (1985), 'make findings of fact and conclusions of law as to the delay, and determine whether compensation for that delay should be part of the final award.' *Grimme III, supra,* at 21.

[Footnote 1] *Grimme Combustion, Inc. v. Mergentime Corporation and Insurance Company of North America,* [385 Pa.Super. 260,] 560 A.2d 793 (1989), *appeal denied,* [528 Pa. 611,] 596 A.2d 157 (1989).

[Footnote 2] *Grimme Combustion, Inc. v. Mergentime Corporation and Insurance Company of North America,* [406 Pa.Super. 620,] 595 A.2d 77 (1991), *ap-*

*peal denied,* [530 Pa. 644,] 607 A.2d 254 (1992).

[Footnote 3] Of this sum, $47,630.96 and $17,736.64, representing the unpaid contract balance and a 10% escalation clause respectively, were liquidated damages, while the balance was unliquidated.

[Footnote 4] *Grimme Combustion, Inc. v. Mergentime Corporation and Insurance Company of North America,* 695 A.2d 443 (Pa.Super.1997) (unpublished memorandum), *appeal denied,* [550 Pa. 706,] 705 A.2d 1309 (1998).

*Grimme Combustion, Inc. v. Mergentime Corporation and Insurance Company of North America,* Nos. 138 and 844 EDA 2001, unpublished memorandum at 2–4 (Pa.Super. filed February 13, 2002)[1] (*"Grimme IV"*), *appeal denied,* 571 Pa. 707, 812 A.2d 1230 (2002).

¶ 2 Specifically, the order this court entered in *Grimme III* provided:

We vacate the judgment to the extent that it included (1) damages against the surety for increased labor and materials costs occasioned by Mergentime's alleged delay, (2) damages against Mergentime for breaching its duty to provide Grimme with reasonable access [to the construction site from the roadbed], and (3) prejudgment interest. We remand for proceedings consistent with this memorandum.

*Grimme III* at 22–23.

In December of 1998, the trial court filed an opinion pursuant to the remand instructions. In February of 2000, the trial court filed a Supplemental Opinion in response to Appellants' 'Motions for Post Trial Relief,' challenging the December 1998 Opinion, and in November of 2000, the trial court filed a second

1. 797 A.2d 1029 (Pa.Super.2002).

supplement to address yet more 'post trial motions' challenging the February 2000 Opinion. A Notice of Appeal was lodged following the consistent denial of these motions.[Footnote 5]

---

[Footnote 5] On June 6, 2001, the trial court filed yet a fourth Opinion, this time in response to an appeal filed by Appellee from the denial of its Application to Enforce Liability on the appeal bond issued by Appellant INA. This appeal was consolidated with the instant one filed by Appellants Mergentime and INA. Appellee concedes in its Brief the accuracy of the trial court's ruling that the matter is not ripe for review, and states its intention not to pursue the appeal.

*Grimme IV,* Nos. 138 and 844 EDA 2001, unpublished memorandum at 4–5.

¶ 3 In affirming the trial court, the *Grimme IV* court stated:

The trial court's task was to make findings of fact and conclusions of law as to the reasons for delay in completion of the construction project; to determine whether compensation for that delay should be part of the final award; and to apply the proper standard for prejudgment interest, the amount of which is dependent on the conclusions drawn as to the two previous inquiries.

*Id.* at 7. Then, carefully reviewing the trial court's findings and conclusions on remand, the *Grimme IV* court observed:

The trial court also found that Appellee's out of pocket damages occasioned by Mergentime's delay should be compensated, and that the amount of the award should remain undisturbed. Here, too, we see no reason to disagree. In remanding, we affirmed that portion of the damages award attributable to

Mergentime's derelictions with regard to sounding, marking and coordination. The trial court found that these failures were the predominant cause of the delay and concomitant expenses. As the omissions were conditions precedent to the ancillary problems of access, we see no reason to adjust the award on that account.

*Id.* at 8–9.

¶ 4 As to the award of prejudgment interest, the *Grimme IV* court noted that the trial court was directed to apply the standard enunciated in *Bozzo, supra,* and observed that the trial court's findings and conclusions indicated it had complied with that directive. *Id.* at 9–10. As a result of its review, the *Grimme IV* court concluded, "We previously approved the trial court's application of the total cost method to calculate damages; we see no reason now, in view of its compliance with the remand order, to gainsay its unwavering determination concerning what is due and owing to [subcontractor]." *Id.* at 10. The *Grimme IV* court therefore affirmed the judgment. *Id.*

¶ 5 Following this court's decision in *Grimme IV* and the denial of contractor's petition for allowance of appeal to the supreme court, Grimme Combustion, Inc. ("subcontractor"), filed a second Application to Enforce Liability on Appeal Bond Pursuant to Pa.R.A[pp].P. 1734(c) ("Application") on April 28, 2003. (R. at ____.)[2] As the *Grimme IV* court noted, subcontractor withdrew its appeal from the trial court's denial of its first Application because it agreed with the court that the first Application was premature, having been filed prior to the filing of contractor's appeal or its disposition in *Grimme IV. Grimme IV,* at 5 n. 5. In its opinion

---

2. The documents in the record are not num-   bered.

denying the first Application, the trial court stated:

The second appeal filed in this matter was by the plaintiff with respect to the February 7, 2001 Order of this Court relating to the denial of the plaintiff's Application to Enforce Liability on the Appeal Bond. On November 17, 2000 this Court entered its most recent Opinion disposing of the defendants' final post trial motions. On December 13, 2000, less than thirty (30) days later and before any appeal had been filed by the defendants, the plaintiff filed its Application to Enforce Liability on the Appeal Bond pursuant to Pa. R.C.P. 1734(c). On December 18, 2000 the defendants filed the appeal above referenced.

The plaintiff's Application to Enforce Liability on the Appeal Bond was denied by this Court for several reasons, not the least of which is the procedural posture of this case. At the time of the initial appeal by the defendants to the Superior Court, the defendants posted an appeal bond issued by United Pacific Insurance Company in order to stay execution of the original judgment against them in the amount of $1,027,860.99. The defendants['] appeal did not terminate in any final order or judgment by the Superior Court which would have triggered the payment requirements under the language of the appeal bond. Instead, the Superior Court remanded the case to this Court with instructions to recalculate the amount of the award due the plaintiff. At no time during the remand process, including the issuance of three different Opinions and multiple sets of post trial motions challenging these Opinions, was there a final judgment of a specified monetary amount upon which the surety could be forced to pay. Procedurally, the Application to Enforce the Bond was premature since it was filed before the appeal period had expired on the final judgment issued by this Court on November 17, 2000. For this reason alone, the application should have been denied.

In addition, there has not been a triggering event under the language of the bond which would enable the plaintiff to proceed to collect thereunder. Pursuant to the precise terms of the bond, it still remains in effect, there being an absence of any conditions voiding the bond. Clearly, the defendant/appellants have not satisfied the judgment of 1995. The 1995 trial court judgment has not been fully affirmed since the matter was remanded for further proceedings which are currently on appeal. The appeal has not been dismissed. There has been no satisfaction of any modified orders. Since none of the required triggering events has taken place, the bond remains in place. The issuance of this Court's judgment of November 17, 2000 is not, in the opinion of this Court, a triggering event under the bond. Since the bond remains in place and the latest judgment issued by this Court remains on appeal, the plaintiff's Application to Enforce Liability on the Appeal Bond was denied.

Trial court opinion, 6/21/01 at 2–4.

¶ 6 The bond subcontractor sought to enforce provides:

Appellants, Mergentime Corporation and Insurance Company of North America, Inc., having appealed from orders of the Court of Common Pleas of Philadelphia County entered in this matter on the 30th day of June, 1995 and the 7th day of July, 1995, and having procured the execution of this instrument for the purpose of complying with the Pennsylvania Rules of Appellate Procedure, the undersigned surety acknowledges itself bound and indebted to the Common-

wealth of Pennsylvania, for the use of the persons or parties entitled thereto, in the sum of One Million Two Hundred Forty Thousand Dollars ($1,240,000.00), to be paid as required by law.

The condition of this obligation is that if the appellants shall satisfy the above-identified orders, if they are affirmed or if for any reason the appeals are dismissed, or shall satisfy any modifications of the orders, and in either case shall pay all costs, interest and any damages for delay that may be awarded, this obligation shall be void; but otherwise it shall remain in force.

United Pacific Insurance Company Appeal Bond No. U1606407, dated and filed July 28, 1995 ("appeal bond"), R. at ____, Exhibit A.[3] The appeal at issue herein, brought by Travelers as successor in interest to United Pacific, and by INA, involves the continuing vitality of this bond under the factual and procedural history of this case, considering both the express terms of the bond and Appellate Rule 1734. That rule provides:

> Chapter 17. Effect of Appeals; Supersedeas and Stays
>
> Stay or Injunction in Civil Matters
> **Rule 1734. Appropriate Security**
>
> . . . .
>
> (b) Terms of bond. A supersedeas bond shall be conditioned for the satisfaction of the order if it is affirmed or if for any reason the appeal is dismissed, or for the satisfaction of any modification of the order and in either case costs, interest and any damages for delay that may finally be awarded.

(c) Liability of sureties. If security is given under this chapter in the form of a bond, stipulation or other undertaking in the nature of a bond, with one or more sureties, each surety submits himself to the jurisdiction of the lower court and irrevocably appoints the clerk of the lower court as his agent upon whom any papers affecting his liability on the bond or undertaking may be served. This liability may be enforced on application in the lower court without the necessity of an independent action. The application and such notice of the application as the lower court prescribes may be served on the clerk of the lower court, who shall forthwith mail copies to the sureties if their addresses are known.

Pa.R.App.P. 1734(b) and (c), 42 Pa.C.S.A., Amended Dec. 11, 1978, effective Dec. 30, 1978; April 26, 1982, effective 120 days after May 15, 1982; July 7, 1997, effective in 60 days.[4]

¶ 7 According to subcontractor's second Application, it made a formal demand on contractor and INA to satisfy the "now final judgment" on December 24, 2002. (Application at ¶ 24.) INA satisfied the judgment against it on February 21, 2003 with a payment of $545,807.48, which included a portion of the greater judgment against contractor. (*Id.* at ¶¶'s 25 and 26.) Subcontractor therefore calculated the amount of the judgment against contractor as $1,246.770.56, an amount subcontractor communicated to contractor on March 4, 2003. (*Id.* at ¶¶'s 27 and 28.) According to the second Application, however, despite the unequivocal language of the trial court's June 26, 2001 opinion, set

---

**3.** The language of the bond tracks the language of Pa.R.App.P. 1751, FORM OF BOND, as that Rule existed in 1995. *See* Pa.R.App.P. 1751, 42 Pa.C.S.A. (amended July 7, 1997, effective in 60 days).

**4.** The 1997 amendments did not affect subsections (b) and (c).

forth *supra,* contractor and Travelers "have taken the position that the 1995 Appeal Bond is not in effect, and that no amount will be paid under the bond." (*Id.* at ¶ 30.)

¶ 8 In its memorandum of law in support of its answer, contractor and INA argued that the appeal bond was limited by its express language to the orders entered June 30, 1995 and July 7, 1995, and any modification of those orders; and that the order subcontractor sought to enforce, the trial court's order dated November 17, 2000 and docketed December 18, 2000, was not covered by the bond, which only covered modifications by an appellate court, not the trial court. ([Contractor's] and INA's Memorandum of Law in Opposition to [Subcontractor's] Application to Enforce Liability on Appeal Bond, 5/19/03 at 8–9 ("Memorandum"), R. at _____.) In support of this argument, contractor and INA cited many of the cases INA and Travelers cite on appeal.

¶ 9 On August 22, 2003, Judge DiBona entered his opinion and order containing numerous findings of fact and conclusions of law and entering judgment in favor of subcontractor and against United Pacific in the amount of $1,240,000 plus post-judgment interest and costs. (Trial court opinion, 8/22/03, R. at _____.)[5] INA and Travelers filed an appeal on September 22, 2003, and filed an appeal bond through Westchester Fire Insurance Company in the amount of $1,488,000 the same day.

¶ 10 Travelers and INA raise the following issues on appeal:

1. Whether the trial court erred in holding that an appeal bond, posted in 1995 for an appeal to the Superior Court from a monetary judgment, was not discharged at the conclusion of the appeal, where the Superior Court's decision remanded the case and did not leave in place any judgment for the payment of money that could be enforced?

2. Whether the trial court erred in holding that the new judgment which it entered in 2000 after the remand from the Superior Court, based on its new findings of fact and conclusions of law, constituted a modification of the previously appealed judgment under the terms of both Appellate Rule 1734(b) and the appeal bond securing the previous judgment?

3. Whether the trial court erred in extending the obligation of a surety on an appeal bond beyond the undertaking for which the surety agreed to be bound, according to the plain language of the appeal bond?

Appellants' brief at 4.

¶ 11 Both parties have extensively briefed the issues. The trial court, likewise, has conscientiously responded to the questions this appeal raises. Because the issues are intertwined, we, like the trial court, will address them together. On December 19, 2003, the trial court filed its Rule 1925(a) opinion in response to contractor's Rule 1925(b) statement. In its opinion, the court observed:

Defendant contends that the liability under the appeal bond was discharged when the appeal was terminated in appellants['] favor. This Court disagrees, since the appeal was not terminated,

5. By order entered January 27, 2004, the trial court granted the motion to correct the amount of the judgment filed by INA and Travelers. The amount of the judgment was modified to correct a calculation in the amount of pre-judgment interest, reducing it from $1,240,000 to $909,030.22, inclusive of both pre-judgment and post-judgment interest through February 21, 2003. (R. at _____.)

because it merely vacated in part the trial court judgment. Upon remand, the trial Court fully complied with the instructions in the memorandum and issued 76 new Supplemental Findings of Fact and 17 new Supplemental Conclusions of Law in its February 10, 2000 Opinion. That Opinion was eventually appealed to the Superior Court which affirmed the trial Court on February 13, 2002 when the appeal was denied. The Superior Court's denial of the appeal was further upheld when the Supreme Court denied defendants['] Petition for Allowance of Appeal on November 7, 2002. At that time, this Court's July 11, 1995 judgment, as modified by the additional Findings of Fact, Conclusions of Law and Supplemental Opinions, became final. This final judgment is now being pursued by plaintiff under the Application to Enforce the Appeal Bond. This Court held that the appeal bond could be enforced, because the bond was still in effect and had not been terminated, discharged or released by the holding of the Superior Court. Contrary to the defendants' position, the underlying appeal was not successfully terminated in favor of the defendants. The Superior Court affirmed that portion of the judgment which awarded damages to the plaintiff for Mergentime's delay in sounding and marking of repair areas. This holding was not the successful termination of defendants' appeal. *See Conston v. New Amsterdam Casualty Co.,* 366 Pa. 219, 77 A.2d 603 (1951) and *Commonwealth v. Lenhart,* 233 Pa. 526, 82 A. 777 (1912). Since the July 11, 1995 judgment of the trial Court awarding damages was 'affirmed' in the 1997 Superior Court Memorandum, the then existing appeal bond was not terminat-

ed, discharged or released. Therefore, this Court held that the appeal bond remained in full force and effect and was available to the plaintiff for enforcement pursuant to its terms. The Application to Enforce the Appeal Bond was appropriately granted and the Order of August 21, 2003 should stand accordingly.

Trial court opinion, 12/19/03 at 3–4.

¶ 12 As Travelers and INA note, no Pennsylvania appellate court has directly addressed the issues this case raises, although some older cases, including cases on which both the parties and the trial court rely, addressed a similar issue under the predecessor to Rule 1734. *See Conston v. New Amsterdam Cas. Co.,* 366 Pa. 219, 77 A.2d 603 (1951); and *Commonwealth, to the Use of Washington County v. Lenhart,* 233 Pa. 526, 82 A. 777 (1912). The language of the former rule differed significantly, however, from Rule 1734's language, in that the former rule required the appellant to prosecute the appeal "with effect," which the supreme court interpreted to mean to prosecute the appeal with success. *Lenhart,* 233 Pa. at 530, 82 A. at 778.

¶ 13 As a result of the dearth of case law in this Commonwealth, both parties have cited to numerous cases from other jurisdictions in support of their interpretations of the language of Rule 1734(b), and in particular the language, "or for the satisfaction of *any* modification of the order and in either case costs, interest and any damages for delay that may finally be awarded." *Id.* (emphasis added).[6] As noted, *supra,* Travelers and INA would have us restrict "modification" to modifications made by an appellate court only, and cite numerous cases from other jurisdictions in support of their interpretation. Subcontractor, in contrast, would have us inter-

---

**6.** From the convoluted procedural history of this case, set forth *supra,* it is clear why the

issue this case presents does not arise more frequently.

pret Rule 1734(b) to impose the obligation under the bond to the final award, following appeal, remand, modification by the trial court, and affirmance on appeal, and similarly cites cases from other jurisdictions in support.

¶ 14 We, like the trial court, find, however, that we can confine our analysis to the language of the bond itself and to the applicable Rules of Appellate Procedure to decide the issues INA and Travelers raise. We turn, however, to the language from *Amwest Surety Ins. Co. v. Graham*, 949 S.W.2d 724 (Tex.Ct.App. 1997), for a cogent definition of and limitations to the obligation under a supersedeas bond.[7] As the *Amwest* court opined, "A supersedeas bond is a contract by which a surety obligates itself to pay a final judgment rendered against its principal under the conditions stated in the bond." *Id.* at 726 (citation omitted). Continuing, the *Amwest* court observed, "Supersedeas bonds are therefore construed as any other contract, and the cardinal rule of con-

struction is to ascertain the intent of the parties." *Id.* Finally, for our purposes, the *Amwest* court opined, "Accordingly, '[t]he sureties are no further bound than they have contracted to be. They are given the simple justice of a literal interpretation of the language of their undertaking.'" *Id.*, quoting *Trent v. Rhomberg*, 66 Tex. 249, 18 S.W. 510, 512 (1886).

¶ 15 Additionally, as with any issue of statutory construction, we must keep in mind the purpose of a supersedeas bond.[8] As our supreme court stated in *Conston*, *supra*, quoting the trial court in that case, "'"Supersedeas has been described (*Williams v. Bruffy*, 102 U.S. 248, 249, 26 L.Ed. 135) as an auxiliary process designed to supersede the enforcement of the judgment of the court below, brought up by writ of error for review."' *Wilkinson v. United Parcel Service of Pennsylvania, Inc., et al.* (No. 2), 1945, 158 Pa.Super. 34, 39, 43 A.2d 414, 416." *Conston*, *supra* at 221, 77 A.2d at 604 (affirming the judgment on the opinion of the trial court).

---

7. *See Trach v. Fellin*, 817 A.2d 1102, 1115 (Pa.Super.2003) (*en banc*) (recognizing that we are not bound by federal cases but may use them for guidance to the degree we find them useful and not incompatible with Pennsylvania law) (citations omitted), *appeal denied*, 577 Pa. 725, 847 A.2d 1288 (2004).

  We note additionally that federal law differs from Pennsylvania law in that "[t]here is no federal statute or rule of civil procedure that defines the conditions which must occur to trigger a surety's obligation under a supersedeas bond." *Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 782 F.Supp. 870, 875 (S.D.N.Y.1991), citing *Tennessee Valley Auth. v. Atlas Machine & Iron Works, Inc.*, 803 F.2d 794, 798 (4th Cir.(Va.) 1986). In many of the extra-jurisdictional cases, the bonds also include language specifically limiting modification of orders to appellate court modifications. *See, e.g., Aetna Cas. & Surety Co. v. LaSalle Pump & Supply Co., Inc.*, 804 F.2d 315, 317 (5th Cir.(La.) 1986) (stating, "Louisiana cases are clear that an appeal bond that complies with statutory requirements covers not only the judgment issued by

the trial court but any modification of that judgment by the appellate court."); *Amwest*, 949 S.W.2d at 726 (limiting appellants' obligation to situations in which the judgment of the Supreme Court or Court of Appeals shall be against appellants); *Holmes v. United States Fidelity & Guar. Co.*, 844 S.W.2d 632 (Tenn.Ct.App.1992) (observing that bond provided that "appellant prosecute its said appeal with effect, or in case it fail therein, do pay and satisfy, abide by and perform the Judgment, order of decree of said Court of Appeals to be had therein, or of the Supreme Court . . .").

8. *See* Pa.R.App.P. 107, 42 Pa.C.S.A. (providing, "Chapter 19 of Title 1 of the Pennsylvania Consolidated Statutes (rules of construction) so far as not inconsistent with any express provision of these rules, shall be applicable to the interpretation of these rules and all amendments hereto to the same extent as if these rules were enactments of the General Assembly.").

■ ¶ 16 We note additionally that supersedeas bonds are judicial bonds which, as the language Pa.R.App.P. 1751 requires and as the bond at issue herein provides, binds and indebts the surety to the Commonwealth in the amount stated in the bond. *See also* L. Franklin Elmore & Mason A. Goldsmith, Jr., ***Judicial Bonds***, in The Law of Suretyship 203, 207 (Edward G. Gallagher, ed., 2nd ed.2000) (classifying supersedeas bonds as a form of judicial bond and observing, "The filing or submission of a judicial bond constitutes a surety's submission to the jurisdiction of a court."). Continuing, Elmore and Goldsmith note that "[a]lthough the characteristics of particular judicial bonds may vary, their general purpose is clearly to ensure that parties involved in civil litigation will fulfill their respective obligations." *Id.* at 210. Thus, the authors advise, "Given the fact that judicial bonds are essentially financial guaranty bonds … sureties are well advised to secure adequate collateral and strong indemnitors before issuing a judicial bond." *Id.*

■ ¶ 17 Thus, while an appellant seeks review of a judgment against it on appeal, the bond protects the judgment in appellee's favor. The bond thereby assuages the very concerns at issue herein; that appellant's assets may be dissipated during the appeal period, leaving no assets upon which appellee may execute to satisfy its judgment if it is affirmed. The essential purpose of the bond is particularly evident in a case such as this in which, during the ten-year period that has passed since contractor and INA filed their appeal, no court has ever completely reversed contractor's liability on the 1995 judgment against it.

■ ¶ 18 Turning, then, to the specific language of the bond at issue in this case, we read the first paragraph to provide that contractor and INA appealed from the judgments entered against them on June 30th and July 7, 1995 and procured the execution of the bond in the amount of $1,240,000, the amount of the judgment in favor of subcontractor, which United Pacific, the surety, acknowledged itself bound and indebted to pay as required by law.

■ ¶ 19 The second paragraph sets forth the conditions that will void the bond. We have paraphrased this paragraph so it may be more easily understood in light of the purpose of a supersedeas bond. Those conditions are that if appellants, contractor and INA, satisfy the June 30th and July 7th 1995 orders if those orders are affirmed or if for any reason the appeals are dismissed, or if contractor and INA shall satisfy ***any*** modifications of the orders, along with costs, interest, and damages for delay, then United Pacific's obligation shall be void; "but otherwise it [United Pacific's obligation] shall remain in force." (Appeal bond, R. at ____ (emphasis added).)

¶ 20 As the trial court notes, none of the triggering events that would void the obligation, set forth in the bond, have occurred: contractor and INA did not satisfy the orders or any modifications of the orders, and the appeals were not dismissed. Instead, this court affirmed the 1995 orders in part and vacated in part, and remanded to the trial court for modification of the orders. The trial court complied with this court's directives and entered its modified judgment dated November 17, 2000 and docketed December 18, 2000, in the amount of $1,240,000 plus post-judgment interest. This court affirmed the modified judgment on February 13, 2002 and denied reargument on April 26, 2002, after which our supreme court denied allocatur. Because neither contractor nor INA has satisfied the June and July 1995 orders or any modification of those orders, the bond, by its own terms, remains in force.

¶ 21 As former Judge Tenney,[9] writing for the District Court for the Southern District of New York, observed under similar facts but where the language of the bond differed from the language herein:

[T]he bond remains in effect unless one of two conditions is met: (1) the appellant satisfies the judgment after the appeal is either dismissed or the judgment is affirmed; or (2) the appellant satisfies any modification of the judgment as the appellate court awards.[10] Because neither of these conditions has occurred, [surety's] obligation under the bond has not been discharged.

The parties do not dispute the fact that there was neither a dismissal of the appeal nor an affirmance of the judgment. The parties disagree, however, as to whether the Second Circuit's remand constituted a modification of the judgment. *While the parties urge that the resolution of this issue will determine whether the bond is still in effect, the court disagrees. By its own language, the bond remains in effect regardless of whether the Second Circuit's remand constituted a modification of the judgment: if the remand was not a modification, then that condition has not been met; and even if the remand was a modification, the condition has still not been met because Collectors' Guild has not 'satisf[ied] in full such modification.'* The bond, therefore, remains in effect. [Surety] and [intervenor] argue that the bond was discharged because there was neither a dismissal of the appeal nor an affirmance or modification of the district court's judgment.... *Implicit in*

*their argument, however, is an interpretation of the bond's language as automatically discharging [surety's] obligation unless one of the specified conditions occurs.... As the court has indicated, this interpretation contradicts the plain language of the bond.*

*Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.,* 782 F.Supp. 870, 875 (S.D.N.Y.1991) (emphasis added).

¶ 22 We find nothing in Rule 1734(b) that warrants a different result. Again, reading that rule with due consideration for the purpose of a supersedeas bond, we find it exactly parallels the language of the bond in this case, which, as noted, tracks the language set forth in Rule 1751 as it existed in 1995. We find even further support for our interpretation in Rule 1751, as amended in 1997. The new rule, also governing "Form of Bond," provides in its second paragraph: *"Upon conclusion of this matter, if the appellant satisfies* the above identified order *or any court order modifying or affirming that order* and pays all costs, interest and damages for delay that may be awarded, *this obligation shall be void;* otherwise, it shall remain in force." Pa.R.App.P. 1751, 42 Pa.C.S.A. as amended July 7, 1997, effective in 60 days (emphasis added).

■ ¶ 23 We therefore hold that pursuant to the plain language of the bond, the bond remained in effect throughout the nearly ten-year period that has passed since contractor and INA filed their appeal because neither contractor nor INA performed any of the actions that would have

9. The District Court for the Southern District of New York has been unable to provide us with former Judge Tenney's first name.

10. The bond at issue specifically limited modification to "modification of the judgment ...

as the Appellate Court may adjudge and award." *Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.,* 782 F.Supp. 870, 875 (S.D.N.Y.1991).

voided United Pacific's, hence Travelers', obligation under the bond. We further hold, however, · that Travelers' obligation under the bond is limited to the lesser of the amount of the judgment or the amount stated in the bond, $1,240,000. *See* note 5, *supra.*

¶ 24 Order affirmed.