**UNITED STATES of America, Defendant–Appellant and Cross Appellee,**

v.

**PULLMAN CONSTRUCTION INDUSTRIES, INC., Plaintiff–Appellee and Cross Appellant.**

**No. 96 C 1196.**

United States District Court, N.D. Illinois, Eastern Division.

June 10, 1997.

---

**304**

Charles J. Cannon, United States Department of Justice, Tax Division, Washington, DC, for U.S..

Stephen Todd Bobo, D'Ancona & Pflaum, Chicago, IL, for Pullman Const. Industries, Inc.

### MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

Now before the Court are cross appeals pursuant to 28 U.S.C. § 158 from an Amended Order of the Bankruptcy Court holding that payments made by Appellee/Cross–Appellant Pullman Construction Industries, Inc. ("Pullman") to the Internal Revenue Service ("IRS") were recoverable as preferential transfers under Section 547 of the Bankruptcy Code, 11 U.S.C. § 547. Specifically, Appellant/Cross–Appellee United States of America ("the Government") contends that the Bankruptcy Court erred when it held that an antecedent tax debt is incurred on the date the taxes were to be deposited with a designated bank depository rather than the date the tax return was to be filed. Pullman contends that the Bankruptcy Court erred in finding that certain other of its payments were not preferential transfers and that Pullman was not entitled to prejudgment interest. For the reasons set forth below, the Court affirms the ruling of the Bankruptcy Court.

### BACKGROUND

The bulk of the relevant facts, as detailed by the Bankruptcy Court, are undisputed by the parties. Prior to filing in bankruptcy, Pullman operated as a heating, ventilating and air conditioning contractor, selling its services primarily to commercial, industrial and governmental entities. In addition, Pullman also designed and manufactured a patented fire damper and related products for the nuclear industry. Pullman maintained its base of operations in Chicago, Illinois, and was incorporated under the laws of the State of Illinois.

Pullman employed 595 people throughout its operations. As an employer, Pullman was required to deduct and withhold income and social security taxes from gross wages earned by its employees. 26 U.S.C. § 3102(a). After Pullman withheld such taxes, but before it remitted those funds to the IRS, it held these taxes in "a special fund in trust for the United States." 26 U.S.C. § 7501. Such taxes are commonly known as "trust fund taxes." In addition, Pullman was required to pay various other taxes, including social security taxes in an amount equal to its employees' withheld taxes. 26 U.S.C. § 3111(a). Unlike withholding taxes, however, these funds are not held in trust for the United States and are referred to as "non-trust fund taxes." Pullman nonetheless was obligated to deposit its matching share of taxes into a bank account along with trust fund taxes. 26 U.S.C. § 6302.

Although Pullman was not required to remit the withheld amounts to the IRS until the end of each quarter when Pullman filed its "Employer's Quarterly Federal Tax Returns", it had to deposit its taxes with a qualified federal tax depository institution shortly after each payroll was made. Specifically, tax deposits associated with each payroll were to be made within three banking days after the end of each one-eighth month period in which the payroll was issued, 26 C.F.R. § 31.6302(c)–1, unless tax liability equaled or exceeded $100,000.00 for the period, in which case Pullman was required to deposit such taxes within one banking day after the payroll was made. 26 C.F.R.

§ 31.6302(c)–1. If Pullman failed to make such deposits in a timely fashion, the IRS was authorized to assess a 10% failure-to-deposit penalty unless the failure was shown to be due to reasonable cause. 26 U.S.C. § 6656(a); 26 C.F.R. § 301.6656–1.

In late 1986 and early 1987, Pullman experienced severe cash flow shortages and operating losses that eventually resulted in its filing a bankruptcy petition on May 1, 1987. By February 1, 1987, approximately 90 days before filing in bankruptcy, Pullman had fallen behind in making its required deposits of trust fund taxes for the first quarter of 1987. During the 90 days prior to May 1, 1987, Pullman sent eight checks, totaling $1,031,-790.64, directly to the IRS. Pullman did not designate the application of the first four payments and the IRS credited those payments to the non-trust fund portion of Pullman's tax debt. With the last four checks, however, Pullman specified that those payments could be applied only to the trust fund portion of its tax liability.

On May 1, 1987, Pullman and three wholly-owned subsidiaries, Pullman Sheet Metal Works, Inc., Preferred Piping, Inc., and MidCity Architectural Iron Co. (collectively "Pullman") petitioned for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 et seq. The cases were jointly administered by the Bankruptcy Court and Pullman administered its affairs as a debtor-in-possession. On January 7, 1992, Pullman filed an adversary complaint against the IRS and the Illinois Department of Revenue seeking to recover certain allegedly preferential payments.[1] Pullman ultimately sought to recover $610,143.64,[2] plus prejudgment interest, from the IRS. The United States filed an amended claim against Pullman, reflecting pre-petition employment tax liability owed for the fourth quarter of 1986 and the first two quarters of 1987 and penalties assessed against Pullman in connection with its failure to timely deposit federal employment taxes.

On August 30, 1995, the Bankruptcy Court first determined that of the five payments at issue, Pullman had an identifiable interest in only $149,197.44 [3]—an amount which represented the "non-trust fund" amounts remitted by Pullman. The remaining $460,946.19 of the 610,143.64 remitted was found to represent the "trust fund" portion of the taxes owed by Pullman, money in which Pullman had no identifiable property interest. The Bankruptcy Court also held that Pullman failed to demonstrate that the non-trust fund taxes satisfied by the $149,197.44 transfer were "last payable without penalty" before Pullman made the payment. Accordingly, the court concluded that Pullman did not establish that it paid $149,197.44 for or on account of antecedent debt as required for preference avoidance and entered judgment for the Government. Pullman moved to alter or amend that judgment.

On January 2, 1996, the Bankruptcy Court granted in part and denied in part Pullman's motion to alter or amend. On January 19, 1996, the Bankruptcy Court entered an Amended Order, holding that it had committed an error of law in finding that Pullman's employment taxes were due for preference purposes as of the date that Pullman's quarterly employment tax return was due rather than the date that Pullman was subject to a penalty for failure to make deposits of the withheld taxes with a qualified bank. Specifically, Bankruptcy Judge Schmetterer found that Pullman's first three tax payments—totaling $99,197.44 in non-trust fund payments—were made on account of antecedent debt and thus recoverable by Pullman, but that Pullman's fourth payment of $50,000.00 was not made on account of antecedent debt because it was not attributed to any particu-

---

1. The Illinois Department of Revenue settled its dispute and was dismissed from the action.

2. Pullman originally sought to recover all eight of the pre-petition remittances totaling $1,031,-790.64. However, before the case was submitted to the Bankruptcy Court for trial, Pullman stipulated that the last three transfers were not preferential and sought to recover only the first five payments totalling $610,143.64.

3. Specifically, of the three checks Pullman sent to the IRS during the 90 days prior to bankruptcy, ($146,178.97, $149,153.83, $145,094.84), $99,197.44 was allocable to non-trust fund taxes. The fourth payment—$50,000—was also found to be a non-trust payment.

lar missed deposit subject to penalty. Bankruptcy Judge Schmetterer further held that Pullman was not entitled to recover prejudgment interest on the judgment.

## DISCUSSION

In reviewing a bankruptcy court's decision, this Court acts as an appeals court and applies the same standards of review as govern appellate review in other cases. Accordingly, the Court reviews the bankruptcy court's conclusions of law *de novo* and its factual findings for clear error. *In re Lloyd,* 37 F.3d 271, 274 (7th Cir.1994); *Matter of UNR Indus., Inc.,* 986 F.2d 207, 208 (7th Cir.1993). Mixed questions of law and fact or questions pertaining to the application of the facts to the law are reviewed *de novo. In re Ebbler Furniture & Appliances, Inc.,* 804 F.2d 87, 88 (7th Cir.1986).

There are several issues on appeal. The Government challenges the Bankruptcy Court's holding that Pullman's remittance of $99,197.44 was made on account of antecedent debt and thus, recoverable as preferential payments. In addition, Pullman contends that the Bankruptcy Court erred by determining (1) that only $99,197.44 of the remittances made by Pullman to the Government were made from Pullman's property; (2) that Pullman's $50,000.00 payment was not made on account of an antecedent debt; and (3) that Pullman was precluded by sovereign immunity from recovering any pre-petition interest on its judgment. These contentions will be addressed in turn.

I. *The Bankruptcy Court Correctly Determined That The First Three Payments Were Made On Account of Antecedent Debt*

■ Section 547(b) of the Bankruptcy Code allows a trustee or a debtor-in-possession to recover certain payments made by the debtor within 90 days prior to the filing of the bankruptcy petition. Specifically,

§ 547(b) provides that a trustee may avoid any transfer of an interest of the debtor in property:

> (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; [and] (4) made on or before 90 days before the filing of the petition [this period is extended to one year in the case of a creditor who qualifies as an "insider"]; (5) that enables such creditor to receive more than such creditor would receive if—
> (A) the case were a case under Chapter 7 of this title;
> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). Pullman has the burden to establish all elements of § 547(b) by a preponderance of the evidence. *See* 11 U.S.C. § 547(g). With respect to the $99,-197.44 at issue in the Government's appeal, the disputed issue is whether the payments made by Pullman to the IRS totalling $99,-197.44 were made on account of an antecedent debt within the meaning of § 547(b)(2).[4]

Although the term "antecedent debt" is not defined in the Bankruptcy Code, courts generally have construed the term to mean a claim that existed against the debtor at the time the claim was paid, even if the claim was unliquidated, unfixed or contingent. *See In re Energy Co-op., Inc.,* 832 F.2d 997, 1001 (7th Cir.1987); *In re Brown Family Farms, Inc.,* 80 B.R. 404 (Bankr.N.D.Ohio 1987). When determining when a tax claim is incurred for preference purposes, a special rule applies: "A debt for a tax is incurred on the day when such tax is last payable without penalty, including any extension." 11 U.S.C. § 547(a)(4).

■ In the present case, the Bankruptcy Court concluded that for purposes of

---

4. With regard to the other elements, the Bankruptcy Court found that: (1) Pullman had an interest in the first three payments made to the IRS, totaling $9,197.44; (2) the United States was a creditor of Pullman and the payments were made to or for the benefit of the United States; (3) Pullman was insolvent at all times during the 90 days prior to its filing in bankruptcy; and (5) receipt of these payments enabled the IRS to receive more than it would have received if the payments had not been made and Pullman had instead been liquidated in a Chapter 7 proceeding.

§ 547, Pullman's debt was incurred on the date when it first became subject to a penalty for its failure to deposit with a qualified depository institution the taxes it later paid to the IRS. The Government challenges the Bankruptcy Court's conclusion and asserts that the relevant date for preference purposes was the date that Pullman's quarterly employment tax return for the first quarter of 1987 was due to be filed—April 30, 1987—, and not the date that a deposit was to be made. According to the Government, because Pullman made the payments in issue before April 30, 1987, the remittances Pullman seeks to recover were not paid on account of an antecedent debt and thus, cannot be recovered as preferential payments.

However, as the Bankruptcy Judge Schmetterer correctly noted, the preference cases which have construed § 547(a)(4) interpret the relevant point to be the date on which the debtor is exposed to penalties, rather than the date the penalty is actually assessed or the date on which the debtor filed its quarterly return. *See In re Harvard Mfg. Corp.*, 97 B.R. 879 (Bankr.N.D.Ohio 1989); *In re E & S Comfort, Inc.*, 92 B.R. 616 (Bankr.E.D.Pa.1988); *In re American Int'l Airways, Inc.*, 83 B.R. 324 (Bankr. E.D.Pa.1988), *rev'd on other grounds sub nom., Begier v. Internal Revenue Service*, 878 F.2d 762 (3d Cir.1989), *aff'd*, 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990); *In re Greasy Creek Coal Co.*, 1984 WL 15648, 84–2 U.S. Tax Cases ¶ 9651 (Bankr.S.D.W.Va. 1984).

For example, in *American International Airways,* the IRS argued that certain withholding and excise taxes were not incurred until the returns were due to be filed. The *American International Airways* court disagreed and held that in the preference context, the debtor's failure to make withholding tax deposits within three business days of respective payroll dates subjected it to penalties and that the imposition of those penalties caused the taxes to be due when the deposits were to be made. 83 B.R. at 330–31. The Court in *Harvard Mfg.* interpreted § 547(a)(4) similarly, reasoning that because the failure to make deposits in a timely manner places the employer in a penalty position,

a debtor's tax debt is created when it fails to make timely deposits as required under IRS rules. 97 B.R. at 882–83.

Furthermore, a plain reading of § 547(a)(4) does not reveal a reference to the filing date of a tax return; the only time reference in the statute itself is to when a penalty has been incurred: "a debt for tax is incurred on the day when such tax last became payable without penalty. . . ." Where a statute is plain on its face, it must be interpreted according to its plain meaning without resorting to legislative history. *Smith v. U.S.*, 508 U.S. 223, 240, 113 S.Ct. 2050, 2060, 124 L.Ed.2d 138 (1993); *Family & Children's Ctr., Inc. v. School City of Mishawaka,* 13 F.3d 1052, 1060 (7th Cir.), *cert. denied,* 513 U.S. 961, 115 S.Ct. 420, 130 L.Ed.2d 335 (1994).

The Government here relies primarily on the Fifth District's decision in *In re Ripley* to support its contention that none of Pullman's employment taxes were due until the quarterly return was due. 926 F.2d 440, 448 (5th Cir.1991). *Ripley* arose in a bankruptcy Chapter 13 context and involved the question of whether certain self-employment taxes, which were due to be deposited on a quarterly basis prior to the bankruptcy petition date, were pre-petition claims. *Id.* at 446–49. The case did not involve a preference claim, but among other arguments, the debtors asserted § 547(a)(4) in support of their position. *Id.* at 445. The Fifth Circuit refused to apply that provision there, stating that § 547(a)(4) must be read in context, as the section delineates which pre-petition transfers must be recovered by the bankruptcy trustee. *Id.* at 447. The *Ripley* court stated that "section 547(a)(4) supplies that date with respect to tax claims for purposes of this section; it is not intended as a universal statement of when taxes become payable." *Id.* The *Ripley* court thus implied that § 547(a)(4) should be applied literally in a preference context, even though such an application was not appropriate under § 1305 of the Bankruptcy Code. *Id.*

In any case, regardless of how *Ripley* is interpreted, this Court agrees with Bankruptcy Judge Schmetterer that, for preference purposes under § 547(a)(4), the relevant

date is when a debtor is exposed to penalties regardless of the date the return is actually due. Here, Pullman was compelled to make timely deposits of its portion of employment taxes in an authorized bank depository in order to avoid a penalty. When Pullman failed to make such deposits on time and did not seek a reasonable cause exception, the IRS did, in fact, assess penalties against Pullman.

Pullman paid $99,197.44 of the non—trust fund taxes with three checks. These amounts were last due without penalty on the first banking day after February 1, ($33,-255.51), on the first banking day after February 15, 1987 ($33,506.19), and on the first banking day after March 8, 1987 ($32,435.74). Pullman did not make these deposits with a bank but mailed directly to the IRS the first two payments on February 27, 1987 and the third payment on March 18, 1987. Thus, this Court finds that Pullman's later payment of these amounts—for a total of $99,197.44— was made on account of antecedent debt under § 547(b)(2). Accordingly, the Court affirms the Bankruptcy Court's ruling on this issue.

## II. The Bankruptcy Court Had Sufficient Evidence To Determine That Portions of the Disputed Payments Were Made On Account of Trust Fund Taxes

■ A payment is preferential, and thus, recoverable, only to the extent that the debtor had an identifiable property interest in the proceeds at the time of the payment. 11 U.S.C. § 547(b). It is well established that any payment made to the IRS that either is paid from funds held in trust or is directed to be paid to trust-fund liabilities are not considered to be preferential payments. *Begier v. Internal Revenue Serv.*, 496 U.S. 53, 55–56, 110 S.Ct. 2258, 2261–62, 110 L.Ed.2d 46 (1990). A debtor has no property interest in funds paid to the IRS to the extent the IRS demonstrates that a "sufficient nexus" lies between the payment and income and social security taxes previously withheld by the debtor. *Id.* at 65–67, 110 S.Ct. at 2266–67.

■ In the present case, the Bankruptcy Court found that the Government had established that $460,946.19 of the "disputed payments"—the first five payments mace by Pullman—represented income and social security taxes Pullman withheld from gross wages[5]; thus, the court concluded that under *Begier*, those payments were held "in trust" for the Government and as a result, Pullman did not have an identifiable interest in those funds. In its appeal, Pullman argues that the Bankruptcy Court lacked sufficient evidence to determine which portion of these disputed payments were made on account of trust fund taxes. Pullman claims that the entire amounts of the disputed payments were transfers of Pullman's property and that the Bankruptcy Court erred in not allowing full recovery of these payments as preferences.

The Bankruptcy Court made extensive factual findings regarding what portion of the disputed payments were made on account of the trust fund taxes Pullman owed. As to the first three disputed payments,[6] the Bankruptcy Court determined the "trust fund" portion of each payment from the employment tax worksheets included in the record; these worksheets were prepared and used by Pullman to calculated its weekly payroll and tax liability and Pullman stipulated to their admissibility. For each of the first three disputed payments, the check sent to the IRS corresponded to the exact total of the trust and non-trust fund tax liabilities shown on Pullman's worksheet for each payroll period. Thus, using Pullman's own employment tax worksheets, the Bankruptcy Court was able to determine the exact portion of each

---

**5.** The five disputed payments total $610,143.64. The Bankruptcy Court found that the Government had demonstrated that $341,230.19 of the first three payments (totalling $440,427.64) were held in trust for the United State but that Pullman had established that it had an identifiable property interest in the fourth payment of $50,-000.00. The fifth disputed payment of $119,-716.00 also was found to be a trust fund pay-

ment; however, Pullman concedes that it is not entitled to recover this fifth payment and appeals now with respect to only the first four disputed payments.

**6.** The IRS allocated the entire amount of the first three payments to the non-trust portion of Pullman's tax liability.

disputed payment that Pullman made on account of its trust and non-trust fund tax liability.

Accordingly, given the direct and undisputed evidence supplied by Pullman's tax worksheets, the Bankruptcy Court had more than sufficient evidence to determine the portion of the disputed payments that were made on account of trust fund taxes owed by Pullman and it correctly did so.

### III. *Pullman Failed To Prove That The $50,000 Payment Was Made On Account of Antecedent Debt*

As previously stated, although Bankruptcy Court found that Pullman had an identifiable property interest in its payment of $50,000.00 on March 31, 1987, it determined that Pullman was not entitled to recover this amount because it was not made on account of an antecedent debt. Specifically, the Bankruptcy Court held that because Pullman's $50,-000.00 payment was not attributed to any particular missed deposit subject to a penalty, Pullman had failed to sustain its burden of proving that this payment was made on account of an antecedent debt. *See Matter of Prescott*, 805 F.2d 719, 726 (7th Cir.1986).

In its appeal, Pullman contends that the Bankruptcy Court incorrectly determined that the $50,000.00 payment was made on account of an antecedent debt. According to Pullman, this round amount payment was not related to any particular missed deposit but was instead a payment made on account of outstanding tax liabilities Pullman had generally. Pullman asserts that the IRS understood that the purpose of the check was to reduce outstanding employment taxes owed and applied the payment accordingly.

■ However, while Pullman may have owed a certain amount of employment taxes at the time it made the $50,000.00 payment, Pullman did not demonstrate, as it did with the first three disputed payments, that it was subject to imposition of a penalty for failure to make a timely deposit or payment. Absent such proof, the Bankruptcy Judge could not determine that the $50,000.00 payment was made on account of an antecedent debt as defined by § 547(a)(4), and thus, he correctly found that Pullman had failed to sustain its burden on this issue.

### IV. *The Bankruptcy Court Properly Determined That Pullman Is Not Entitled To Prejudgment Interest On Its Preference Recovery*

■ The Bankruptcy Court properly concluded that Pullman should not receive prejudgment interest from the Government as part of its preference judgment. Although a debtor or its trustee is "ordinarily entitled to recover interest on a preference judgment against a transferee," *In re Husher*, 131 B.R. 550, 554 (E.D.N.Y.1991), the rule changes when the transferee is the United States. *See Harvard Mfg.*, 97 B.R. at 884. "Interest cannot be awarded against the United States unless the government has expressly waived its sovereign immunity to allow such interest by contract, statute or consent of Congress." *Husher*, 131 B.R. at 554 (citing *Library of Congress v. Shaw*, 478 U.S. 310, 314, 106 S.Ct. 2957, 2961, 92 L.Ed.2d 250 (1986)). The Bankruptcy Code, however, does not expressly waive the United States' sovereign immunity with regard to an award of prejudgment interest. *WJM, Inc. v. Massachusetts Dept. of Public Welfare*, 840 F.2d 996, 1006 (1st Cir.1988); *Husher*, 131 B.R. at 554.

Pullman argues that to deny prejudgment interest would be akin to a denial of full recovery. However, as the Bankruptcy Court noted, any "policy, no matter how compelling, is insufficient standing alone, to waive this immunity." *Shaw*, 478 U.S. at 321, 106 S.Ct. at 2965 (citing *United States v. New York Rayon Importing Co.*, 329 U.S. 654, 663, 67 S.Ct. 601, 605–06, 91 L.Ed. 577 (1947)).

Accordingly, because prejudgment interest may not be awarded against the United States without an express waiver of sovereign immunity and because there is no such waiver within the Bankruptcy Code, Pullman is not entitled to prejudgment interest.

### CONCLUSION

For the foregoing reasons, this Court affirms the Bankruptcy Court's judgment entered January 19, 1996.