# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Humphreys, Insurance : 
Commissioner of the Commonwealth : 
of Pennsylvania, in his official capacity : 
as Statutory Liquidator of Bedivere : 
Insurance Company, formerly known as : 
OneBeacon Insurance Company, : 
     Plaintiff : 
          : 
    v. : 
          : 
SureTec Insurance Company, : 
     Defendant : 
          : 
(Ancillary to In Re: Bedivere Insurance : 
Company, (In Liquidation), :  No. 1 BIC 2023
No. 1 BIC 2021) :  Argued: December 4, 2023

BEFORE: HONORABLE ANNE E. COVEY, Judge
     HONORABLE STACY WALLACE, Judge
     HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION BY
JUDGE COVEY          FILED: February 15, 2024

    Before this Court is SureTec Insurance Company's (SureTec) Preliminary Objection to Bedivere Insurance Company's (Bedivere)[1] statutory liquidator, Michael Humphreys' (Liquidator) Complaint filed pursuant to Section 530(a) of Article V of The Insurance Department Act of 1921 (Act),[2] 40 P.S. §

---

   [1] Bedivere is "a Pennsylvania[-]domiciled insurance company with a principal place of business c/o AG Risk Management, Inc., 1880 JFK Boulevard, Philadelphia, PA 19103." Complaint ¶ 3.
   [2] Act of May 17, 1921, P.L. 789, *as amended*, 40 P.S. §§ 221.1-221.63. Article V of the Act was added by Section 2 of the Act of December 14, 1977, P.L. 280.

221.30(a), to recover funds Bedivere transferred to SureTec on December 30, 2020.[3] The issue before this Court is whether Liquidator stated a legal claim upon which this Court may grant relief.

## Background[4]

On November 30, 2020, in litigation between OneBeacon Insurance Company (OneBeacon) and Fireman's Fund Insurance Company (FFIC), the United States (U.S.) District Court for the Southern District of New York (District Court) entered judgment against OneBeacon in the amount of $2,966,993.31. *See* Complaint ¶¶ 14, 24. On December 30, 2020, OneBeacon appealed from the District Court's order to the Second Circuit Court of Appeals (Second Circuit Court), and simultaneously filed a Motion for Approval of Supersedeas Bond and to Stay Execution of Judgment Pending Appeal (Bond Motion). *See id*. ¶ 25. Also on December 30, 2020, Bedivere, "formally [sic] known as OneBeacon,"[5] and SureTec[6] executed a supersedeas bond (Bond),[7] binding themselves to pay FFIC up to $3,020,000.00. *Id*., Ex. 1 at 1, 3; *see also id*. ¶ 26. Bedivere paid SureTec

---

[3] Humphreys is the Insurance Commissioner of the Commonwealth of Pennsylvania. Under the Act, in his official capacity as Insurance Commissioner, Humphreys is Bedivere's statutory liquidator.

[4] The facts are as Liquidator alleged in the Complaint. The parties do not dispute the facts.

[5] At some point between November 30, 2020 and December 30, 2020, OneBeacon "merged into Bedivere[.]" Complaint ¶ 14.

[6] SureTec is a Texas-based surety insurance bonding company wholly owned by Markel Surety Holdings Corporation, and is licensed in Pennsylvania. *See* Complaint ¶¶ 7-8.

[7] "The bond serves three purposes: (1) it ensures the judgment debtor may obtain a refund if he or she is meritorious on appeal . . . ; (2) it mitigates any risk that the judgment debtor may not be able to fulfill the judgment after appeal; and (3) it guarantees that the appellee can recover damages caused by any delay incident to the appeal, such as interest and costs." *SDF9 Cobk LLC v. AF & AR LLC*, 2015 WL 3440259, at *1 (E.D.N.Y. May 27, 2015).

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 648 (S.D.N.Y. 2018).

$3,020,000.00 by wire transfer on December 30, 2020, for the Bond.[8]  *See id*. ¶ 27. FFIC did not oppose the Bond Motion.  *See id*. ¶ 28.

On March 2, 2021, Jessica K. Altman (Altman), then Pennsylvania Insurance Commissioner, filed a petition in this Court to place Bedivere into liquidation under the Act (Liquidation Petition).[9]  *See id*. ¶¶ 5, 29; *see also In Re: Bedivere Ins. Co. (In Liquidation)* (Pa. Cmwlth. No. 1 BIC 2021) (*Bedivere I*).  By March 11, 2021 Order (Liquidation Order), this Court granted the Liquidation Petition and, upon the unanimous consent of the Board of Directors of Bedivere and Bedivere's sole shareholder Trebuchet US Holdings, Inc., appointed Altman and her successors in office (i.e., Humphreys) as Bedivere's statutory Liquidator.  *See id*. The Liquidation Order "vest[ed] [Liquidator] with title 'to all property, assets, contracts and rights of action (assets) of Bedivere of whatever nature and wherever located, whether held directly or indirectly, as of the date of [the] filing of the [Liquidation Petition (i.e., March 2, 2021)].'"  Complaint ¶ 35 (quoting Liquidation Order ¶ 4); *see also Bedivere I*.

On August 27, 2021, the District Court granted the Bond Motion.  *See* Complaint ¶ 30; *see also id*. Ex. 2.  On October 6, 2022, the Second Circuit Court affirmed the District Court's judgment in FFIC's favor and against

---

[8] The parties agree that Bedivere paid SureTec $3,020,000.00.  *See* Prelim. Obj. ¶ 5.  This Court has explained that a "supersedeas bond must include the appellant's liability for 'all costs, interest and damages for delay that may be awarded.'  Pa.R.A.P. 1751."  *N. Coventry Twp. v. Tripodi*, 64 A.3d 1128, 1134 (Pa. Cmwlth. 2013).  Here, "[t]he judgment amount include[d] $1,222,743.23 in prejudgment interest at the New York statutory rate of 9% per annum.  Federal post-judgment interest continue[d] to accrue pursuant to [Section 1961 of the U.S. Code,] 28 U.S.C. § 1961."  Complaint ¶ 24.

[9] Altman filed the Liquidation Petition in her official capacity as Insurance Commissioner. *See In Re: Bedivere Ins. Co. (In Liquidation)* (Pa. Cmwlth. No. 1 BIC 2021).  Humphreys became Pennsylvania's acting Insurance Commissioner on February 28, 2022.  He was confirmed as Insurance Commissioner on June 27, 2023.  *See* www.insurance.pa.gov/Pages/Homepage/MeettheCommissioner.aspx (last visited Feb. 14, 2024). As Altman's successor, Humphreys is now Bedivere's Liquidator.  *See* Complaint ¶ 4.

OneBeacon/Bedivere. *See id*. ¶ 31; *see also id*. Ex. 3. On October 7, 2022, SureTec paid $2,973,291.98 to FFIC in settlement of the judgment ($3,020,000.00 less $46,708.02). *See id*. ¶ 32. On February 11, 2023, SureTec returned $80,946.51 to Bedivere ($46,708.02 in excess funds, plus $34,238.49 in interest). *See id*. ¶ 33; *see also id*. Ex. 4.

**Facts**

On March 10, 2023, Liquidator filed the Complaint in this Court against SureTec, alleging therein that, by executing the Bond, SureTec became Bedivere's creditor. *See id*. ¶ 37. Liquidator avers that Bedivere's payment of $3,020,000.00 to SureTec was for, or on account of, an antecedent debt or debts incurred by Bedivere relative to the Bond, *see id*. ¶ 38, which was executed and made within one year before Altman filed the Liquidation Petition. *See id*. ¶ 39. Liquidator claims that Bedivere's $3,020,000.00 payment to SureTec "may be to enable SureTec to receive a greater percentage of the debt than another creditor of the same class would receive," *see id*. ¶ 40, because Bedivere was likely insolvent[10] when it paid SureTec

---

[10] Section 503 of the Act defines *insolvency* as:

> (1) For an insurer issuing only assessable fire insurance policies[:] (i) the inability to pay any obligation within thirty days after it becomes payable, or (ii) if an assessment be made within thirty days after such date, the inability to pay such obligation thirty days following the date specified in the first assessment notice issued after the date of loss pursuant to [Article VIII, S]ection 808 of the [A]ct[, 40 P.S. § 918[.]

> (2) For any other insurer the inability to pay its obligations when they are due, or whose admitted assets do not exceed its liabilities plus the greater of (i) any capital and surplus required by law for its organization, or (ii) its authorized and issued capital stock. For any insurer licensed to do business in the Commonwealth as of the effective date of this [A]ct which does not meet this standard, the term "insolvency" shall mean for a period not to exceed three years

4

the $3,020,000.00, *see id.* ¶ 41, and, thus, SureTec's $2,973,291.98 payment to FFIC was a preferential transfer. *See id.* ¶ 43. Liquidator seeks to have this Court: (1) exercise summary jurisdiction under Section 530(g) of the Act, 40 P.S. § 221.30(g); (2) enter judgment against SureTec to void the $3,020,000.00 transfer; and (3) award Liquidator costs of suit, interest, and such other relief as this Court deems proper.

On June 22, 2023, SureTec filed the Preliminary Objection to the Complaint (Preliminary Objection) pursuant to Pennsylvania Rule of Civil Procedure (Civil Rule) 1028(a)(4), Pa.R.Civ. P. 1028(a)(4) (relating to demurrer), asserting that, although the transfer of funds from Bedivere to SureTec occurred on December 30, 2020, the debt was not created until the judgment was affirmed on October 6, 2022, some 22 months later. SureTec maintains that the fact that its obligation to satisfy the judgment was created by the terms of the Bond issued prior to the filing of the Liquidation Petition is irrelevant. SureTec claims that, because

---

from the effective date of this [A]ct that it is unable to pay its obligations when they are due or that its admitted assets do not exceed its liabilities plus any required capital contribution ordered by the [Insurance C]ommissioner under provisions of the [Act].

In determining the financial condition of an insurer, the Insurance Commissioner shall consider assets to be admitted or non[-]admitted as provided in [Article III, S]ection 320.1 of the [A]ct[, 40 P.S. § 443.1, added by Section 4 of the Act of February 17, 1994, P.L. 92, repealed by the Act of July 10, 2002, P.L. 749.]

For purposes of this article "liabilities" shall include but not be limited to reserves required by statute or by [the I]nsurance [D]epartment['s] general regulations or specific requirements imposed by the [Insurance C]ommissioner upon a subject company at the time of admission or subsequent thereto, and any other capital and surplus requirements.

40 P.S. § 221.3 (emphasis omitted).

In the instant matter, Liquidator does not specify in the Complaint when Bedivere became insolvent. Rather, Liquidator avers: "According to Bedivere's annual statements, Bedivere was very likely insolvent at the time when SureTec received the above sum of $3,020,000.00 [on] December 30, 2020, as that term is defined in [Section 503 of the Act] . . . ." Complaint ¶ 41.

5

SureTec's preexisting contractual obligation to satisfy the judgment did not become a debt until the final judgment was affirmed, the transfer of assets 22 months earlier was not for, or on account of, an antecedent debt. SureTec declares that Bedivere's transfer of funds to SureTec for the Bond was not a voidable preference under Section 530(a) of the Act and, thus, Liquidator failed to state a valid legal claim against SureTec.

On July 19, 2023, Liquidator opposed the Preliminary Objection, asserting that, when Bedivere and SureTec executed the Bond, and when this Court granted the Liquidation Petition, Bedivere retained an interest in the funds transferred to SureTec to ensure that FFIC's judgment, if upheld on appeal, was paid. Liquidator contends that it was not until October 6, 2022, more than a year after the litigation pending against OneBeacon was stayed, that the appeal for which the Bond was issued was resolved against OneBeacon. Liquidator declares that, after SureTec paid the judgment to FFIC, SureTec returned the remaining cash and interest to Bedivere, indicating that Bedivere's interest in those funds had remained part of the liquidation estate.

On November 2, 2023, SureTec filed a Motion to File Reply and Sur-Reply Briefs, joined by Liquidator, which this Court granted on November 3, 2023. SureTec filed its Reply Brief on November 13, 2023. Therein, SureTec continued to argue that Bedivere's interest in the Bond funds was contingent on the Second Circuit Court's decision on appeal, and it proffered Liquidator's First Report Regarding the Status of the Liquidation of the Bedivere Estate (First Report) in support thereof.[11] *See* Reply Brief Ex. A. SureTec newly added that Bedivere no

_____

[11] Liquidator does not reference the First Report in, nor did Liquidator append it to, the Complaint currently under this Court's review. "[A] court may not ordinarily take judicial notice in one case of the records of another case, whether in another court or its own, even though the contents of those records may be known to the court." *Styers v. Bedford Grange Mut. Ins. Co.*,

6

longer had a property interest in the monies it paid SureTec to secure the Bond. SureTec also newly asserted that, rather than an antecedent debt, the Bond funds were an insurance payout in the ordinary course of business[12] to settle and pay a policyholder's disputed claim and that, if this Court rules that Bedivere's posting of the Bond funds was a voidable preference, distressed insurers would no longer be able to obtain supersedeas bonds.

Liquidator filed its Sur-Reply Brief on November 13, 2023, in which it pointed out that SureTec raised new arguments in its Reply Brief that it could and

---

900 A.2d 895, 899 (Pa. Super. 2006) (quoting *220 P'ship v. Phila. Elec. Co.*, 650 A.2d 1094, 1097 (Pa. Super. 1994)).  However, a limited exception to that general rule allows "a court [considering preliminary objections] to take notice of a fact which the parties have admitted[,] or which is incorporated into the complaint by reference to a prior court action."  *Guarrasi v. Scott*, 25 A.3d 394, 398 n.3 (Pa. Cmwlth. 2011) (quoting *Styers*, 900 A.2d at 899).  Here, because Liquidator referenced and incorporated *Bedivere I* in the Complaint, this Court may take judicial notice thereof.  *See* Complaint ¶¶ 5, 29.

[12]    Section 547(c) of the [U.S.] Bankruptcy Code[, 11 U.S.C. § 547(c),] provides several exceptions to [a t]rustee's authority to avoid transfers as preferential.  Among these exceptions is the one contained in [Section] 547(c)(2) [of the U.S. Bankruptcy Code, 11 U.S.C. § 547(c)(2)], which is commonly known as the "ordinary course of business" exception.  The goal of this exception is to "leave undisturbed normal financial relations."  H.R. Rep. No. 95-595, at 373, U.S. Code Cong. & Admin. News 1978, p. 6329.

The ordinary course of business exception applies to any transfer that "was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee" if the transfer was either "made in the ordinary course of business or financial affairs of the debtor and the transferee" or "made according to ordinary business terms."    11 U.S.C. § 547(c)(2).

*In re Gaines*, 502 B.R. 633, 639 (Bankr. N.D. Ga. 2013) (footnote omitted).  Litigation judgment payments are not generally considered in the ordinary course of business under Section 547(c)(2) of the U.S. Bankruptcy Code.  *See In re Richardson*, 94 B.R. 56 (Bankr. E.D. Pa. 1988). Accordingly, "[t]he party contending that the transfer falls under [the ordinary course of business] exemption[] bears the burden of proving that assertion by a preponderance of the evidence." *In re Conex Holdings, LLC*, 518 B.R. 269, 279 (Bankr. D. Del. 2014).

should have made in its brief supporting the Preliminary Objection.[13]  Liquidator further declared that, to the extent this Court allows SureTec to present its new arguments, SureTec was not a policyholder acting in the ordinary course of business but, rather, was a surety that assumed the risk of doing business with an insurer, and that Bedivere's interest in the monies it paid to SureTec for the Bond was neither contingent nor extinguished because it always retained a reversionary interest in the funds.

The parties presented argument on the Preliminary Objection to this Court on December 4, 2023.  This matter is now ripe for this Court's disposition.

## Discussion

Initially, under the Pennsylvania Rules of Appellate Procedure (Appellate Rules) titled *Summary and Formal Proceedings Against Insurers*, Appellate Rule 3783(b) specifies that the Civil Rules apply to adversarial proceedings like insurance liquidation matters.  *See* Pa.R.A.P. 3783(b).  Thus, preliminary objection filing rules under Civil Rule 1028(a)(4) (relating to

---

[13] Liquidator does not offer support for the implication that SureTec waived its new arguments.  Although, generally, one cannot raise new arguments or remedy deficient discussions in an appellate reply brief, *see* Pennsylvania Rule of Appellate Procedure 2113(a), and "the appellate court may suppress the non-complying portions" of an offending reply brief, *Riverview Carpet & Flooring, Inc. v. Presbyterian SeniorCare*, 299 A.3d 937, 969 n.20 (Pa. Super. 2023), there is no similar limitation for reply briefs in support of preliminary objections filed in this Court's original jurisdiction, particularly where, as here, the new argument relates to the antecedent debt claim challenged in the original preliminary objection.  Moreover, despite that "[a]ll preliminary objections shall be raised at one time[,]" Civil Rule 1028(b), Pa.R.Civ.P. 1028(b), this Court found no case law in which that limitation was applied to new arguments made to support existing preliminary objections, particularly in the case of demurrers, which are not waived if not raised by preliminary objection.  *See* Civil Rule 1032(a).  Accordingly, this Court has no basis on which to deem SureTec's new arguments waived.

demurrer)[14] apply to insurance liquidation matters. *See Pratter v. Penn Treaty Am. Corp.*, 11 A.3d 550 (Pa. Cmwlth. 2010) (Brobson, J., single judge op.).

> In ruling on preliminary objections, [this Court] must accept as true all well-pleaded material allegations in the [complaint], as well as all inferences reasonably deduced therefrom. Th[is] Court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. In order to sustain preliminary objections, *it must appear with certainty that the law will not permit recovery*, and any doubt should be resolved by a refusal to sustain them.
>
> A preliminary objection in the nature of a demurrer admits every well-pleaded fact in the complaint and all inferences reasonably deducible therefrom. It tests the legal sufficiency of the challenged pleadings and will be sustained only in cases where the pleader has clearly failed to state a claim for which relief can be granted. *When ruling on a demurrer, a court must confine its analysis to the complaint.*

*Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010) (emphasis added; citations omitted). "'[C]ourts reviewing preliminary objections may not only consider the facts pled in the complaint, but also any documents or exhibits attached to it.' *Allen v. Dep't of Corr.*, 103 A.3d 365, 369 (Pa. Cmwlth. 2014)." *Foxe v. Pa. Dep't of Corr.*, 214 A.3d 308, 311 n.1 (Pa. Cmwlth. 2019).

Here, SureTec argues that its transaction with Bedivere cannot be a preferential transfer because it did not involve an antecedent debt. SureTec's preexisting contractual obligation to satisfy the judgment did not become a debt until the final judgment was affirmed. SureTec asserts that *In re: Tribune Co. Fraudulent Conveyance Litigation*, 10 F.4th 147 (2d Cir. 2021) (*Kirshner*), controls.

---

[14] Civil Rule 1028(a)(4) declares that preliminary objections may be filed by any party to any pleading based on "legal insufficiency of a pleading (demurrer)[.]" Pa.R.Civ.P. 1028(a)(4).

Liquidator retorts that, by executing the Bond, SureTec became Bedivere's creditor. SureTec used a preference payment to satisfy OneBeacon's judgment. Liquidator claims that an antecedent debt occurs when a creditor first has a claim against a debtor, whether fixed or contingent on subsequent events. SureTec's argument that its preexisting contractual obligation to satisfy the judgment did not become a debt until the final judgment was affirmed, misstates the nature of the Bond agreement. Liquidator states that *Kirshner* is not binding and is not relevant here.

> [A] liquidation means the cessation of the business of the insurer, the winding up of its affairs, and, ultimately, the insurer's dissolution. The primary responsibility of the statutory liquidator is to marshal the assets of the insurer in liquidation and to pay, to the extent possible, the obligations of the insurer pursuant to a plan of distribution.

*Pratter*, 11 A.3d at 554 n.4. To that end,

> [t]he [l]iquidator's authority to administer an insolvent insurer's estate is quite extensive. Section 520(c) of the Act, 40 P.S. § 221.20(c), provides that once th[is] Court orders the liquidation of an insurer and appoints the [Pennsylvania Insurance] Commissioner as statutory liquidator, the **liquidator**
>
> > **shall be vested by operation of law with the title to all of the property**, **contracts** and rights of action and all of the books and records of the insurer ordered liquidated, wherever located, **as of the date of the filing of the petition for liquidation**. [The liquidator] may recover and reduce the same to possession . . . .
>
> The [l]iquidator is statutorily authorized to: (1) identify, collect and liquidate all of the insurer's assets; (2) collect all debts and moneys due the insurer; (3) sell, transfer, abandon[,] or otherwise dispose of the insurer's property; (4) enter into contracts necessary to carry out the liquidation process; (5) exercise and enforce all rights, remedies[,] and powers of any creditor, shareholder[,] or

10

policyholder; (6) prosecute actions on behalf of the insurer; and (7) perform any other acts that are necessary to collect, conserve[,] and protect the insurer's assets and property. *See* Sections 520, 523, 527, and 534 of the Act, 40 P.S. §§ 221.20, .23, .27, and .34. Further, under the Act, the [l]iquidator must determine the validity, amount, and priority of all claims asserted against the insurer to ensure that the assets are distributed in a manner consistent with the Act and th[is] Court's directives. *See* Sections 536-41 and 544-46 of the Act, 40 P.S. §§ 221.36-.41, .44-.46. As th[is] Court observed in *Foster v. Monsour Medical Foundation*, 667 A.2d 18 (Pa. Cmwlth. 1995), "under [the statutory] scheme, the [s]tatutory [l]iquidator steps into the shoes of the insurer and recoups its assets in order to protect the rights of its creditors, policyholders and shareholders." [*Id.*] at 20 . . . .

*Altman v. Kyler*, 221 A.3d 687, 703 (Pa. Cmwlth. 2019) (emphasis added).

"One concern when an insurer becomes insolvent is the issue of preferences." *Ario v. Ingram Micro, Inc.*, 965 A.2d 1194, 1196 (Pa. 2009). Section 530(a) of the Act declares, in relevant part:

A preference is a transfer of any of the property of an insurer to or for the benefit of a creditor, for or on account of an antecedent debt, made or suffered by the insurer within one year before the filing of a successful petition for liquidation under this article[,] the effect of which transfer may be to enable the creditor to obtain a greater percentage of this debt than another creditor of the same class would receive.

40 P.S. § 221.30(a). "The liquidator of an insolvent insurer may institute a preference action to void certain transfers of property." *Ario*, 965 A.2d at 1196. Section 530(a) of the Act expressly authorizes a liquidator to "recover the property or . . . its value from any person who has received . . . the property[.]"[15] 40 P.S. § 221.30(a).

---

[15] Section 530(k) of the Act adds, in pertinent part, that "[e]very person receiving any property from the insurer . . . as a preference voidable under subsection (a) shall be personally liable therefor and shall be bound to account to the liquidator." 40 P.S. § 221.30(k).

11

Here, Liquidator filed the Complaint to void and recover Bedivere's December 30, 2020 payment to SureTec for the Bond and later paid to FFIC on the basis that it was a preferential property transfer under Section 530(a) of the Act. *See* Complaint at 1. Section 530(a) of the Act specifies that preferences are voidable if:

> (i) the insurer was insolvent at the time of the transfer; (ii) the transfer was made within four months before the filing of the [liquidation] petition; (iii) the creditor receiving it or to be benefited thereby or his agent acting with reference thereto had, at the time when the transfer was made, reasonable cause to believe that the insurer was insolvent or was about to become insolvent; or (iv) the creditor receiving it was an officer, an employe or attorney or other person who was in fact in a position of comparable influence in the insurer to an officer whether or not he held such position, . . . or any other person, firm, corporation, association, or aggregation of persons with whom the insurer did not deal at arm's length.

40 P.S. § 221.30(a). Importantly, however, before a property transfer can be voided under Section 530(a) of the Act, the transaction must first satisfy the five statutory criteria for a preference. *See Ario*, 965 A.2d at 1196 ("A transfer . . . may be non-preferential if it does not fit within the statutory definition of a preference.").

Accepting as true the well-pleaded facts and inferences reasonably deducible therefrom, as this Court must, *see Torres*, Liquidator's Complaint and documents attached thereto support that Bedivere's December 30, 2020 payment to SureTec for the Bond was

> [1.] a transfer of . . . property of [Bedivere] [2.] to or for the benefit of a creditor [(FFIC)[16]], . . . [3.] made . . . within

[16] Notably, SureTec did not object to the Complaint on the basis that it was not Bedivere's creditor. Section 503 of the Act defines *creditor* as "a person having any claim, whether matured or unmatured, liquidated or unliquidated, secured or unsecured, absolute, fixed[,] or contingent." 40 P.S. § 221.3. Liquidator avers in the Complaint that "SureTec became a *creditor of Bedivere*" upon execution of the Bond, Complaint ¶ 37 (emphasis added), and that "[t]he effect of Bedivere's payment of . . . $3,020,000.00 to SureTec *may be* to enable SureTec to receive a greater percentage

> one year before the filing of [the Liquidation Petition,] . . . [5.] the effect of which [] may be to enable [FFIC] to obtain a greater percentage of [Bedivere's] debt than another creditor of the same class would receive.

40 P.S. § 221.30(a). Thus, SureTec's Preliminary Objection is limited to whether Bedivere's Bond payment to SureTec could be "[4.] for or on account of an antecedent debt[.]" *Id.*

The Pennsylvania Supreme Court has ruled that "[if] transfers . . . are not on account of an antecedent debt, they are not preferences under [the Act], and thus not recoverable by the [liquidator]." *Ario*, 965 A.2d at 1201. "The phrase 'antecedent debt' is not defined in the [Act] or in [Pennsylvania] case law." *Id.* at 1201-02.

> As our analysis involves interpreting Section [530] of the [] Act, we necessarily begin by considering the Statutory Construction Act [of 1972 (SCA)]. [*See*] 1 Pa.C.S.[] §§ 1501[-1991]. The [SCA] is clear the objective of all interpretation and construction of statutes is to ascertain and effectuate the intention of the legislature. [*See* § 1921(a) of the SCA,] 1 Pa.C.S.[] § 1921(a). [The

---

of [Bedivere's] debt than another *creditor* of the same class would receive." Complaint ¶ 40 (emphasis added).

Generally,

> [t]he surety is bound to the same extent that the principal debtor is bound. In other words, the liability of a surety is coextensive with that of the principal debtor; that is, the surety stands in the shoes of the principal and must complete any obligation due the obligee at the time of default.

16 Summ. Pa. Jur. 2d Commercial Law § 7:23 (2d ed. 2023) (footnotes omitted). Here, SureTec stood in Bedivere's shoes as the debtor, holding the *entire* judgment sum for SureTec to pay FFIC on Bedivere's behalf. Under such circumstances, it was unlikely that Bedivere could default or otherwise leave SureTec obligated on its behalf such that SureTec would have a claim against Bedivere. Moreover, SureTec paid the Bond proceeds to FFIC. In this instance, *as the holder of the judgment against Bedivere*, and the party to whom SureTec paid the judgment amount, *FFIC is the creditor*. SureTec raised that "FFIC has not been named a party to this matter, even though it is in possession of the transferred funds[,]" for the first time in its Reply Brief. *See* SureTec Reply Br. at 6 n.3.

Pennsylvania Supreme] Court has found that **the best indication of the General Assembly's intent is the plain language of the statute**. [*See*] *Martin v. . . . Dep't of Transp., Bureau of Driver Licensing*, . . . 905 A.2d 438 . . . ([Pa.] 2006). When the words of a statute are clear and unambiguous, there is no need to look beyond the plain meaning of the statute "under the pretext of pursuing its spirit." [Section 1921(b) of the SCA,] 1 Pa.C.S.[] § 1921(b); *see Commonwealth v. Conklin*, . . . 897 A.2d 1168, 1175 ([Pa.] 2006). Consequently, only when the words of a statute are ambiguous should a court seek to ascertain the intent of the General Assembly through consideration of the various factors found in Section 1921(c) [of the SCA]. [*See*] 1 Pa.C.S.[] § 1921(c); [*see also*] *Koken v. Reliance Ins. Co.*, . . . 893 A.2d 70 . . . ([Pa.] 2006).

*Ario*, 965 A.2d at 1201 (emphasis added).

"We ascertain the plain meaning of a statute by ascribing to the particular words and phrases the meaning which they have acquired through their common and approved usage, and in context. [*See* Section 1903(a) of the SCA,] 1 Pa.C.S. § 1903[(a)]." *Commonwealth v. Gamby*, 283 A.3d 298, 306 (Pa. 2022). "To discern the legislative meaning of words and phrases, our Court has on numerous occasions engaged in an examination of dictionary definitions." *Id.* at 307. According to Merriam-Webster's online dictionary, the common and approved meaning of *antecedent* is "a preceding event, condition, or cause[.]" www.merriam-webster.com/dictionary/antecedent (last visited Jan. 16, 2024). The common and approved meaning of *debt* is "obligation[.]" www.merriam-webster.com/dictionary/debt (last visited Feb. 14, 2024). That definition is consistent with Section 101(12) of the U.S. Bankruptcy Code, which declares that

14

"[t]he term 'debt' means liability on a claim."[17, 18]  11 U.S.C. § 101(12).  Thus, this Court holds that the common and approved meaning of the term *antecedent debt* is a ***preceding obligation/liability on a claim***.

The U.S. Bankruptcy Court has held: "[W]hether a debt is current[] or antecedent depends upon when the debt was incurred.  **A debt is incurred when the debtor first becomes legally obligated to pay**." *In re Moran*, 188 B.R. 492, 496-97 (Bankr. E.D.N.Y. 1995) (emphasis added; citations omitted).  In the instant matter, Liquidator and SureTec offer differing interpretations of when OneBeacon/Bedivere was legally obligated to pay in this instance.[19]

---

[17] The Pennsylvania Supreme Court has held that "[u]se of federal bankruptcy law for guidance in interpreting ambiguous state insurance insolvency law is commonly accepted." *Ario*, 965 A.2d at 1203.

[18] Section 101(5)(A) of the U.S. Bankruptcy Code defines *claim*, in relevant part, as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C. § 101(5)(A).

> [T]he definitions of "claim" and "debt" in the [U.S. B]ankruptcy [C]ode reveal that they represent the same liability.  A claim is essentially a right to payment.  A debt is a liability on a claim.  The legislative history to [S]ection 101[(5)(A)] [of the U.S. Bankruptcy Code] states that the "terms are coextensive: a creditor has a 'claim' against the debtor; the debtor owes a 'debt' to the creditor."  H.R. Rep. No. 595, 95[th] Cong., 1[st] Sess. (1977) 310, U.S. Code Cong. & Admin. News 1978, pp. 5287, 6267; *see* S. Rep. No. 989, 95[th] Cong., 2d Sess. (1978) 23, U.S. Code Cong. & Admin. News 1978, p. 5809.

*In re Morton*, 43 B.R. 215, 220 (Bankr. E.D.N.Y. 1984).

[19] The relevant timeline:
- **November 30, 2020** - District Court entered judgment against OneBeacon
- **December 30, 2020 -** OneBeacon appealed, Bedivere and SureTec executed the Bond, and Bedivere paid SureTec pursuant to the Bond
- **March 2, 2021** - Liquidation Petition filed
- **August 27, 2021**- District Court granted the Bond Motion
- **October 6, 2022** - District Court's judgment affirmed
- **October 7, 2022** - SureTec paid $2,973,291.98 to FFIC

According to Liquidator, under *U.S. v. Pullman Construction Industries, Inc.*, 210 B.R. 302 (N.D. Ill. 1997), "[a]lthough the term 'antecedent debt' is not defined in the U.S. Bankruptcy Code, courts generally have construed the term to mean a claim that existed against the debtor at the time the claim was paid, even if the claim was unliquidated, unfixed[,] or contingent." *Id.* at 306. Liquidator further relies on the statement in *ThermoView Industries v. Clemmens*, No. 3:07CV-239-S, 2008 WL 906221, (W.D. Ky. 2008), regarding supersedeas bonds:

> While the appeal is pending, the debtor retains a reversionary interest in the property transferred. It is not until resolution of the appeal affirming the judgment in favor of the creditor that the debtor's interest in the property is extinguished and the obligation of the surety to the creditor under the bond solidified.
>
> *Id.*, at \*\*7-8 . . . . As the *Thermo*[*V*]*iew* court framed the issue, "[t]he question remains how the [U.S.] Bankruptcy Code treats the supersedeas bond scenario; that is, a transfer of an interest in property with a reversionary interest to the debtor." *Id.*, at \*9.
>
> At the time the [B]ond was executed by Bedivere and SureTec in this case, as well as on the date when the Liquidation Petition was granted, Bedivere retained an interest in the funds transferred to SureTec to ensure that FFIC's judgment, if upheld on appeal, was paid. It was not until October 6, 2022, more than a year after [Liquidator] had imposed a stay of all litigation pending against [OneBeacon], that the appeal for which the [Bond] was issued was resolved against [OneBeacon]. After SureTec paid the judgment to FFIC, it returned the remaining cash [] and the interest thereon to Bedivere, indicating that Bedivere's interest in those funds had remained part of the liquidation estate.

- **February 11, 2023** - SureTec returned $80,946.51 (excess funds) to Bedivere
- **March 10, 2023** - Liquidator filed the Complaint

16

Liquidator Br. at 7-8 (internal record citations and emphasis omitted). Thus, Liquidator's position is that, relative to a supersedeas bond, an antecedent debt occurs when a creditor first has a claim against a debtor (which, here, was December 30, 2020),[20] whether fixed or contingent on subsequent events.

> SureTec claims:
>
> 14. Antecedent debt is a term used in the U.S. Bankruptcy Code as a condition precedent to the recovery of debtor's assets from improper transfers and conveyances. *See* 11 U.S.C. § 547[; *s*]*ee also*[] *Kirschner* . . . .[21]
>
> 15. Because Sure[T]ec's pre[]existing contractual obligation to satisfy the judgment did not become a debt until the final judgment was affirmed, the transfer of assets twenty-two (22) months earlier is not "for or on account of an *antecedent* debt . . . [.]"
>
> 16. As a result, the transfer of funds by OneBeacon/Bedivere, to [SureTec] as cash [] for the [] Bond is not a voidable preference pursuant to Section [530(a)] of the Act.

Prelim. Obj. at 3 (italics added). Thus, SureTec takes the position that, relative to a supersedeas bond, antecedent debt occurs when an appellate court affirms the final judgment (which, here, was October 6, 2022).

Under Pennsylvania law, generally, "[t]he taking of the appeal d[oes] not automatically eliminate the effect of the judgment nor postpone its payment. To avoid the necessity of paying a judgment while an appeal is pending requires the grant of a supersedeas." *Tominello v. Janeway*, 573 A.2d 218, 221 (Pa. Super. 1990).

---

[20] Liquidator contends that the relevant date is December 30, 2020. Although the District Court entered judgment in FFIC's favor on November 30, 2020, SureTec did not become Bedivere's surety until it executed the Bond and received payment from Bedivere on December 30, 2020.

[21] In *Kirschner*, a Chapter 11 debtor sought to recover allegedly preferential payments made to the Internal Revenue Service pre-petition. Because *Kirschner* did not involve a supersedeas bond, it is inapposite.

17

Appellate Rule 1731(a) specifies, in relevant part, that an appeal from a money judgment "shall . . . operate as a supersedeas upon the filing with the clerk of the lower court of appropriate security [(i.e., bond)] in the amount of 120% of the amount found due by the lower court and remaining unpaid." Pa.R.A.P. 1731.

> This Court has explained:
>
> A supersedeas bond is a judicial bond designed to "supersede" the enforcement of the trial court's judgment.[22] *Grimme Combustion, Inc. v. Mergentime Corp.*, 867 A.2d 602, 611 (Pa. Super. 2005). It is a contract in which the surety obligates itself to pay a final judgment rendered against the principal. *Id.*

*N. Coventry Twp. v. Tripodi*, 64 A.3d 1128, 1134 (Pa. Cmwlth. 2013); *see also In re Snap Line Servs., Inc.*, 594 B.R. 502, 506 (Bankr. N.D. Ga. 2018) ("[T]he primary purpose of a supersedeas bond . . . is to protect the appellee's judgment 'from non-satisfaction in the event appellant has insufficient assets to satisfy . . . when the judgment is affirmed on appeal.' *Bank S., N.A. v. Roswell Jeep Eagle, Inc.*, . . . 408 S.E.2d 503 (Ga. App. 1991)."); *In re Duplitronics, Inc.*, 183 B.R. 1010, 1014 (Bankr. N.D. Ill. 1995) ("The purpose of the bond is to protect the appellee, who normally would have the right to execute on the judgment immediately, and "insures that if the judgment is affirmed, the appellee will have a source of recovery and will not have been prejudiced by being prevented from executing on the judgment." Michael R. Smith, "Obtaining a Supersedeas Bond," 23 Colo.Law. 607 (1994).").

Moreover, "[t]he appellant retains a reversionary interest in the bond subject to divestment. That is, if the appeal is successful and the judgment is overturned, what is left of the bond reverts to appellant." *Duplitronics, Inc.*, 183 B.R. at 1014 (citation omitted).

---

[22] "[T]he result is that the judgment lien discharged by the supersedeas will lose priority to later-in-time judgment liens, if any, that are already in existence or that arise while the appeal is pending." 20A West's Pa. Prac., Appellate Practice § 1735:3 (2022-23 ed.).

In the event that the appeal fails, appellant is divested of its interest in the bond. Upon the lodging of the mandate of the appellate court with the trial court, the appellate process has concluded, at least as concerns the appeal bond, and the appellant no longer has a property interest in the bond.

*Id.*

Because a supersedeas bond is a contract, it is "'construed as any other contract, and the cardinal rule of construction is to ascertain the intent of the parties.'" *Grimme Combustion, Inc.*, 867 A.2d at 611 (quoting *Amwest Surety Ins. Co. v. Graham*, 949 S.W.2d 724, 726 (Tex. Ct. App. 1997)). Moreover, "Article V [of the Act] is to be 'liberally construed' to effect this purpose. [Section 501(b) of the Act,] 40 P.S. § 221.1(b)." *Ario*, 965 A.2d at 1203.

Here, the District Court-approved Bond stated, in pertinent part:

KNOW ALL BY THESE PRESENTS that Bedivere . . . as Principal, and Sure[T]ec . . . as Surety, are held and firmly bound unto [FFIC], in the amount of . . . []$3,020,000.00[],[23] for which sum, well and truly to be paid, we bind ourselves, our and each of our heirs, executors, administrators, and assigns, jointly and severally, firmly by these presents.

WHEREAS, on November 30, 2020, in the [District] Court, [FFIC] recovered a judgment against [OneBeacon], in the amount of . . . []$2,966,993.31[] and [**OneBeacon**] has filed a Notice of Appeal from such judgment to the [Second Circuit Court] and **desires to suspend execution of said judgment pending such appeal**.

NOW THEREFORE, the condition of this obligation is such that, if the said Bedivere . . . shall pay all costs, disbursements[,] and judgments incurred by reason of the said appeal proceeding, then this obligation shall be null and void and released, otherwise to remain in full force and effect, provided however that the maximum liability

---

[23] According to the Bond, SureTec's maximum liability for the District Court's judgment on Bedivere was $3,020,000.00. *See* Bond at 1-2.

of the Surety shall not exceed the penal sum of . . . []$3,020,000.00[].

Complaint Ex. 1 (Bond) at 1-2 (emphasis added).

Notwithstanding that OneBeacon/Bedivere "desire[d] to suspend *execution* of [the] judgment pending [] appeal[,]" Bond at 1 (emphasis added), and/or that posting of security for the Bond superseded *enforcement* of the District Court's order, OneBeacon/Bedivere nevertheless *incurred* the debt when it was first legally obligated to pay it, *see Moran*, which, in this case, was when the District Court entered its November 30, 2020 judgment against OneBeacon. The Pennsylvania Superior Court has clarified:

> A supersedeas order "is an auxiliary process designed to supersede or hold in abeyance the enforcement of the judgment of an inferior tribunal." *Young J. Lee, Inc. v. . . . Dep*[*'t*] *of Revenue*, . . . 474 A.2d 266 ([Pa.] 1983). A supersedeas order is *not* an appellate ruling on the merits of the judgment below; it "does not open, strike off[,] or vacate the judgment or otherwise remove the judgment from the record or render it invalid." *Babin v. City of Lancaster*, . . . 557 A.2d 464, 466 ([Pa. Cmwlth.] 1989), . . . quoting *Wilkes-Barre Clay Prod*[*s.*] *Co. v. Koroneos*, . . . 493 A.2d 744, 746 ([Pa. Super.] 1985).

*Goodstein v. Goodstein*, 619 A.2d 703, 706 (Pa. Super. 1992).

OneBeacon/Bedivere's liability for the judgment in FFIC's favor was not contingent upon the Second Circuit Court's decision. Rather, OneBeacon/Bedivere's liability for the judgment attached as soon as the District Court entered its November 30, 2020 order. Bedivere was statutorily required to obtain the Bond in order to appeal from the District Court's order, and Bedivere retained a reversionary interest in the funds it transferred to SureTec to obtain the Bond. *See Duplitronics, Inc*. The Bond transaction and the District Court's approval of Bedivere's request to *suspend enforcement* of the judgment did not change the fact that Bedivere owed and was obligated to pay FFIC the judgment amount.

20

Bedivere's liability for the judgment debt extinguished only if the Second Circuit Court disagreed with the District Court on appeal.

Therefore, OneBeacon/Bedivere incurred the subject debt, and FFIC became OneBeacon's/Bedivere's creditor when OneBeacon/Bedivere "first bec[ame] legally obligated to pay" FFIC when the District Court entered judgment in FFIC's favor on November 30, 2020. *Moran*, 188 B.R. at 497. SureTec became Bedivere's surety when the parties executed the Bond and SureTec received payment from Bedivere on December 30, 2020. "It is well settled that where an obligation to pay a debt arises pre[-]petition, but the debt becomes due post[-]petition, that debt is pre[-]petition for purposes of the [U.S.] Bankruptcy Code." *In re Ryan*, 100 B.R. 411, 415 (Bankr. N.D. Ill. 1989). Accordingly, because "it [does not] appear with certainty that the law will not permit recovery," this Court "must" overrule SureTec's Preliminary Objection. *Torres*, 997 A.2d at 1245.

## Conclusion

Based on the foregoing, SureTec's Preliminary Objection is overruled.

_____
ANNE E. COVEY, Judge

Judge Dumas did not participate in the decision in this matter.

21

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Humphreys, Insurance : 
Commissioner of the Commonwealth : 
of Pennsylvania, in his official capacity : 
as Statutory Liquidator of Bedivere : 
Insurance Company, formerly known as : 
OneBeacon Insurance Company, : 
               Plaintiff : 
                : 
          v. : 
                : 
SureTec Insurance Company, : 
               Defendant : 
                : 
(Ancillary to In Re: Bedivere Insurance : 
Company, (In Liquidation), :   No. 1 BIC 2023
No. 1 BIC 2021) : 

# O R D E R

AND NOW, this 15th day of February, 2024, SureTec Insurance Company's (SureTec) Preliminary Objection is OVERRULED, and SureTec shall file an answer to Bedivere Insurance Company's liquidator Michael Humphreys' Complaint within 30 days of the date of this Order.

 

                                 _____

                                 ANNE E. COVEY, Judge